**D.A. DELAHOUSSAYE, et al.,
Plaintiffs-Appellants,**

v.

**Richard SEALE, et al.,
Defendants-Appellees.**

No. 85–4345.

United States Court of Appeals,
Fifth Circuit.

May 2, 1986.

Louis M. Phillips, Taylor, Porter, Brooks & Phillips, John R. Tharp, Baton Rouge, La., for plaintiffs-appellants.

Edwards, Stefanski & Barousse, Homer Ed Barousse, Jr., Crowley, La., for Seale.

C. James Gelpi, New Orleans, La., for Odom.

F. Jefferson Millican, Jennings, La., for Lyons.

Charles J. Boudreaux, Pugh & Boudreaux, Lafayette, La., for Broussard and Boudreaux.

Before BROWN, JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiffs-appellants appeal from the district court's summary judgment in the instant case brought pursuant to 42 U.S.C. § 1983. The district court found that plaintiffs had failed to state a violation of the Due Process Clause of the Fourteenth Amendment. We agree. Accordingly, the judgment of the district court is affirmed.

## I. BACKGROUND

Plaintiff D.A. Delahoussaye was the president, chairman of the board, and principal shareholder of four separately incorporated agricultural firms. Three of the four firms, Louisiana Rice Properties, Inc. ("Louisiana Rice"), Rice Capital Sales, Inc., and Del Rico, Inc., are also plaintiffs in the instant case. Louisiana Rice was a licensed agricultural warehouse under La. Rev.Stat.Ann. § 54:241 (West 1979) (repealed 1983). The fourth firm, Southwest

Louisiana Grain, Inc., was a licensed grain dealer under La.Rev.Stat.Ann. §§ 3:681–690 (West 1979) (repealed 1983). Although separately incorporated, the four corporations were closely interconnected both operationally and financially. For example, the corporations shared the same ownership and management. Moreover, substantial overlap existed among the facilities and employees of the four corporations.

Defendants in the instant case include three former members of the Louisiana Warehouse Commission ("Commission"), Robert Odom,[1] Richard Seale, and Gilbert Lyons, as well as two former Commission employees, Manning Broussard and William Boudreaux. The Commission was empowered under Louisiana law to issue licenses for the operation of agricultural warehouses and to "[m]ake and enforce regulations governing the operation and supervision of [such] warehouses...." La. Rev.Stat.Ann. § 54:247 (West 1979) (repealed 1983). The Commission was further empowered to "inspect the premises and the books, accounts, and records of each operator of a farmer's warehouse for the purpose of determining the operator's ability to fulfill his outstanding obligations to the producers for whom the operator is storing agricultural commodities." La. Rev.Stat.Ann. § 54:248 (1986) (amended 1982). As part of the Commission's regulatory authority, La.Rev.Stat.Ann. § 54:257 (West 1979) (repealed 1983), provided that:

> The commission may temporarily suspend the license of any warehouse or warehouse company found violating any provision of this Chapter or the rules and regulations adopted under it.

> Within ten days of the suspension, the commission shall hold a hearing at which the suspended warehouse or warehouse

company shall be heard in opposition to the suspenstion and its continuance.

Furthermore, section 258 provided that during a section 257 temporary suspension, "an agent of the commission shall direct and supervise the operation of the warehouse or warehouse company under the direction of the commission." La.Rev.Stat. Ann. § 54:258 (West 1979) (repealed 1983).

In the midst of an agricultural downturn evidenced by the failure of a number of Louisiana grain dealers, the Commission conducted an audit of Southwest Grain on February 8–9, 1982.[2] As a result of this audit, the Commission discovered that Southwest Grain owed sixty-nine local farmers 96,800 bushels of soybeans valued at approximately $610,000. After several weeks of attempting to prevent the failure of Southwest Grain and after meeting with Delahoussaye, Commissioner Bob Odom determined that Southwest Grain was unable to meet its obligations to the sixty-nine farmers.

Concerned over the effect of Southwest Grain's impending failure on Delahoussaye's other agricultural operations, the Commission met on March 26, 1982, to consider what action should be taken. According to defendants, the Commission was particularly concerned that Louisiana Rice, as a licensed warehouse, would issue warehouse receipts on nonexistent grain as a means of providing funds to Delahoussaye's troubled grain dealing operations. The Commission unanimously agreed to temporarily suspend the warehouse license of Louisiana Rice.[3]

On March 31, 1982, Delahoussaye was notified of the Commission's decision in a letter signed by Commissioner Bob Odom. Specifically, the letter stated:

> Defendants have indicated that the suspension decision was also based in part on concerns arising out of the close connections between the four separately incorporated Delahoussaye firms. Delahoussaye admitted to having transferred funds from at least one of the related firms to Southwest Grain in an attempt to avoid Southwest Grain's financial failure.

1. Robert Odom was also the Louisiana Commissioner of Agriculture.

2. Only the books of Southwest Grain were examined during this audit. According to plaintiffs, a previous audit of Louisiana Rice's books conducted on December 4, 1981, had revealed no irregularities.

3. This action was apparently intended to affect all of Delahoussaye's agricultural operations.

The purpose of this letter is to notify you that the Warehouse Commission by vote on March 26, 1982, suspended your license in accordance with LSA R.S. 54:257, because of discrepancies in your warehouse audit.

Mr. Manning Broussard, Director, Louisiana Warehouse Commission, under the authority of LSA R.S. 54:258, has been appointed to "direct and supervise the operation" of your warehouse.

The letter further informed Delahoussaye that a hearing had been scheduled for April 7, 1982, to determine whether Louisiana Rice's warehouse license should be permanently revoked. A factual dispute exists regarding the degree to which the Commission's decision was ever actually implemented.

In addition to notifying Delahoussaye of the suspension on March 31, 1982, the Commission also issued a press release. The press release stated:

> The Louisiana Department of Agriculture Wednesday closed one grain dealership and is working with another to attempt to arrange its sale to a prospective buyer, Commission of Agriculture Bob Odom said.
>
> The closing affects Louisiana Rice Properties Inc. with three facilities in the near Kaplan in Vermilian Parish and one, Southwest Louisiana Grain, in Mermentau in Acadia Parish, Odom said.

The press release was reported in a number of Louisian newspapers on the following day.

After receiving notice of the suspension, Delahoussaye reached an agreement with the Commission authorizing Louisiana Rice, Del Rico, Inc., and Rice Capital Sales, Inc. to continue in operation under the Commission's supervision. As part of the agreement, Delahoussaye agreed to close Southwest Grain. Delahoussaye further agreed that the hearing originally scheduled for April 7, 1982, would be postponed.[4]

Eventually, following a hearing on April 23, 1981, the Commission fully reinstated the warehouse license of Louisiana Rice finding "that no financial irregularities existed in the business operations of the firm." This finding was based on an audit of Louisiana Rice's books conducted by Commission employees on March 31, 1982, after written notification of the suspension had been delivered. A press release indicating the Commission's action was issued on April 26, 1982.

Louisiana Rice, Del Rico, Inc., and Rice Capital Sales, Inc. filed the instant suit pursuant to 42 U.S.C. § 1983.[5] Plaintiffs alleged that defendants as individual Commissioners and Commission employees had deprived plaintiffs of protected property and liberty interests without due process in violation of the Fourteenth Amendment. Plaintiffs complained of three acts in particular: (1) the allegedly erroneous temporary suspension of Louisiana Rice's warehouse license; (2) the Commission's supervision of operations at Louisiana Rice, Del Rico, Inc., and Rice Capital Sales, Inc.; and (3) the issuance of press releases notifying the public of the Commission's actions. According to plaintiffs, these acts constituted an "arbitrary, unlawful governmental instrusion and interference."

On April 11, 1985, 605 F.Supp. 1525, the district court granted a motion by all five defendants for summary judgment. After concluding that plaintiffs had failed to state any violation of substantive due process, the district court analyzed whether plaintiffs had stated a procedural due pro-

---

4. Later, in an April 15, 1982, letter to Commissioner Odom's attorney, Delahoussaye's attorney requested that the temporary suspension and supervision of Louisiana Rice be terminated since the normal operations of Louisiana Rice were being impaired by the Commission's action.

5. Plaintiffs, joined by D.A. Delahoussaye, also alleged pendant state claims under La.Civ.Code Ann. art. 2315 (West Supp.1986) for tortious interference with plaintiffs' business and damage to the businesses' reputations. Delahoussaye has also brought a separate state libel action. After granting defendants' motions for summary judgment on the § 1983 claims, the pendant state claims were dismissed without prejudice.

cess claim. The district court recognized that a question of fact existed as to whether plaintiffs were actually deprived of any constitutionally protected interest. The district court also found, however, that the postdeprivation procedural safeguards accorded plaintiffs by Louisiana law provided all the process due. Thus, the district court concluded that plaintiffs had failed to state a claim under the Due Process Clause of the Fourteenth Amendment.[6]

Plaintiffs appeal. On appeal, plaintiffs contend that the district court erred in concluding that the postdeprivation procedural safeguards provided by Louisiana law were adequate to afford plaintiffs due process. According to plaintiffs, the deprivations alleged in the instant case were unconstitutional in the absence of a predeprivation hearing designed to prevent an erroneous license suspension.[7] We disagree and conclude that the postdeprivation safeguards provided by Louisiana law provided all the process due.

## II. DISCUSSION

At the outset, we note that the Due Process Clause of the Fourteenth Amendment requires "some form of hearing" before an individual is finally deprived of a protected property or liberty interest. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). The timing of the required hearing varies, however, depending upon an appropriate accommodation of the competing interests involved in any particular case. *See Matthews v. Eldridge*, 424 U.S. 319, 335–36, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976); *Goss v. Lopez*, 419 U.S. 565, 580, 95 S.Ct. 729, 738–39, 42 L.Ed.2d 725 (1975). In the usual case, due process

requires a hearing prior to a state's initial interference with an individual's protected property or liberty interest. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (due process required a hearing before the state authorized its agents to seize property in a debtor's possession); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's license could not be summarily taken without a prior hearing).

In other instances, however, postdeprivation procedures provided by the state can satisfy the requirements of due process. One such instance is where a state employee's "random and unauthorized conduct" deprives an individual of a protected property or liberty interest. In such an instance, the state cannot as a practical matter provide a predeprivation hearing. Thus, postdeprivation procedures or remedies provided by the state constitute all the process due. *See Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt*, for example, a state employee had negligently lost a state prisoner's hobby kit. After concluding that the prisoner had suffered a deprivation of property within the meaning of the Fourteenth Amendment,[8] the Supreme Court held that all the process due was provided by the state's tort claims procedure. The Court reasoned that where a tortious loss of property results from a random and unauthorized act by a state employer, "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." 451 U.S. at 541, 101 S.Ct. at 1916.

The alleged deprivation in the instant case, however, did not result from the ran-

---

6. The district court also concluded that plaintiffs' suit was barred by the doctrine of sovereign immunity under the Eleventh Amendment. Based on our disposition of plaintiff's appeal, we need not consider this alternate ground for the district court's summary judgment.

7. Plaintiffs have never precisely identified the nature of the predeprivation safeguards required here by due process. However, at sever-

al points plaintiffs have suggested that a presuspension hearing was constitutionally required.

8. This aspect of *Parratt* is no longer good law. *See Daniels v. Williams,* — U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property.") (emphasis in original).

dom and unauthorized acts of state employees. Here, the deprivation occurred pursuant to a Louisiana statute authorizing the temporary suspension of warehouse licenses. Plaintiffs' procedural due process challenge is to "the 'established state procedure' that destroys [their] entitlement without according [them] proper procedural safeguards." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982); *see also Holloway v. Judge Dee Brown Walker, et al.*, 784 F.2d 1287, 1292 (5th Cir.1986) (application of *Parratt* rather than *Logan* depends on whether challenge is to the validity of established procedures or the illegal and unauthorized acts of individual defendants). Thus, the district court's reliance on *Parratt* in the instant case to conclude that plaintiffs had not stated a due process violation was misplaced.

Nevertheless, even where the procedural due process challenge is to "established state procedure," postdeprivation procedures provided by the state can, in some instances, satisfy the requirements of due process. For example, the necessity of quick action by the state in order to safeguard important governmental or public interests can justify prehearing deprivations. *See Hodel v. Virginia Surface Mining & Reclamation Association*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (protection of health and safety of public is paramount governmental interest justifying summary administrative action); *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (upheld summary seizure and destruction of misbranded drugs without a preseizure hearing). Thus, the Supreme Court has recognized that protecting the public interest against *economic harm* can justify the immediate seizure of property without a prior hearing. *See Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (prehearing deprivation authorized where substantial questions raised regarding the competency of a bank's management); *Bowles v. Willingham*, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (setting of price regulations). In such cases, the normal predeprivation opportunity to be heard is pretermitted if the state provides meaningful postdeprivation procedures.

Several factors persuade us that the temporary suspension procedures set out in La.Rev.Stat.Ann. §§ 54:257–258 reflected an appropriate accommodation of the competing interests involved. Thus, the prompt postdeprivation hearing required by section 257 accorded plaintiffs all the process due. The prehearing deprivation authorized by section 257 was based upon a legislative recognition of the need to act quickly in emergency situations to safeguard the economic well-being of farmers.[9] The deprivation authorized by section 257 was only temporary, and, in the instant case, did not require Louisiana Rice to cease operations. Moreover, the supervision of Louisiana Rice's operations by the Commission during the temporary suspension appears to have not substantially interfered with those operations. The temporary suspension was authorized only after a preliminary determination of "cause" by the Commission. Finally, to limit the effect of an erroneous Commission determination, section 257 required a prompt postdeprivation hearing within ten days of the suspension.

Given the above procedural safeguards as well as the strong and traditional public

---

9. For a farmer, a grain warehouse functions much like a bank. In emergency situations, a temporary suspension of a warehouse's license may be necessary to prevent depletion of individual farmers' resources kept on deposit with the particular warehouse. Consequently, we note that 7 U.S.C. § 246 governing federally licensed grain warehouses provides that "[p]ending investigation, the Secretary of Agriculture, or his designated representative, when-

ever he deems necessary, may suspend a license temporarily without hearing." *See also* 7 C.F.R. § 102.9 (1985) (providing for temporary prehearing license suspensions).

La.Rev.Stat.Ann. § 54:241 *et seq.* was repealed in 1983 and replaced by La.Rev.Stat.Ann. §§ 3:3401–3425 (West Supp.1985). Section 3407 of the new statute continues to authorize temporary prehearing license suspensions and supervision.

interest in permitting temporary prehearing grain warehouse license suspensions, plaintiffs have failed to state a violation of the Due Process Clause of the Fourteenth Amendment.[10] Accordingly, the judgment of the district court is

AFFIRMED.

---

**10.** Plaintiffs have also alleged a deprivation of liberty without due process based on injury to their business reputations in conjunction with the alleged injury to more tangible property interests. *See In re Selcraig,* 705 F.2d 789, 795

(5th Cir.1983). Here, however, the postdeprivation procedures accorded plaintiffs by Louisiana law provided all the process due. *Id.* at 796 (due process requires only an opportunity to refute the stigmatizing charge).