JACKSON COURT
CONDOMINIUMS, INC.

v.

CITY OF NEW ORLEANS.

Civ. A. No. 84–3466.

United States District Court.
E.D. Louisiana.

July 20, 1987.

Warren A. Goldstein, New Orleans, La., for plaintiff.

Salvador Anzelmo, City Atty., New Orleans, La., for defendant.

## ORDER AND REASONS

McNAMARA, District Judge.

Before the court is the Motion of Defendant, City of New Orleans ("City"), for Summary Judgment and/or to Dismiss. Plaintiff, Jackson Court Condominiums, Inc. ("Jackson Court"), opposes the Motion. The Motion, set for hearing on May 6, 1987, was taken under advisement on briefs without oral argument. In the instant suit, Jackson Court seeks damages and attorney's fees under 42 U.S.C. § 1983. This suit arises out of the City's enactment of a timesharing moratorium ordinance and the City's denial of Jackson Court's request for a waiver from the provisions of that ordinance.

As one district court judge aptly noted some twenty years ago, "The instant action is of a type increasingly more common, in which citizens feel themselves aggrieved

by some action of local government officials and come to the Federal Court under the Civil Rights Act believing, more emotionally than rationally, that they must be entitled to a remedy here." *Love v. Navarro,* 262 F.Supp. 520, 521 (C.D.Cal.1967). This is just such an action, and for the reasons set out below, the court finds, as a matter of law, that Jackson Court has failed to state a claim under 42 U.S.C. § 1983 and as such, the instant action must be dismissed.

## I.

A reading of the Complaint, the Amended Complaint and the parties' Statements of Uncontested Material facts discloses the following undisputed facts:

Jackson Court purchased a 21–unit apartment building located at 1207 Jackson Avenue in New Orleans on August 15, 1981 for $650,000.00 for the purpose of developing a timeshare condominium project. Prior to the adoption of Ordinance 8344 M.C.S. timesharing among co-owners of immovable property would have been permitted on Jackson Court's property which was located in an "RM–2" zoning district.

On October 22, 1981, the Council of the City of New Orleans ("The Council") adopted Ordinance 8344 M.C.S., establishing a temporary city-wide moratorium on timeshare plans in zoning districts designated, among others, RM–2. The Minutes of the City Council meeting of October 1, 1981, published in the Times-Picayune/States-Item of October 22, 1981, contained a statement of the introduction of a calendar item described by reciting its title. This calendar item was adopted as Ordinance 8344 M.C.S. later on October 22, 1981. No other notice of hearing for the proposed Ordinance was ever published.

Ordinance 8344 provided that upon notice to the Council, any person aggrieved by the Ordinance could seek a waiver or exception upon a showing that the petitioner would experience undue hardship and that the proposed project would not adversely affect the character of the surrounding neighborhood. Other timesharing moratorium ordinances applying to particular areas of the city, e.g., the French Quarter and the Faubourg Marigny, also had waiver provisions. On March 31, 1982, five months after adoption of Ordinance 8344, Jackson Court requested a hearing before the City Council for a waiver of the restrictions of Ordinance 8344 with respect to its project. On April 15, 1982, after a hearing before the City Council, Jackson Court's waiver request was denied. All previous requests for waivers under the various timeshare moratoria had been approved by the Council.

The facts surrounding the April 15, 1982 hearing are disputed. For purposes of this Motion, the court accepts as true Jackson Court's allegations concerning the April 15 hearing as follows:

(a) Except in rare instances not applicable herein, members of the New Orleans City Council have agreed to cast their vote on each zoning matter presented to the City Council for disposition according to and in conformity with the vote cast by that councilman representing the district in which the property that is the subject of the zoning matter presented is located.

(b) This agreement was entered into by elected members of the City Council at a date unknown to Jackson Court and had been in effect through and including the date upon which Jackson Court's application for a waiver from the provisions of the moratorium ordinance was denied by the City Council.

(c) The agreement is now known and referred to as the "Gentlemen's Agreement."

(d) At the April 15, 1982 hearing, the City Council voted in conformance with the "Gentlemen's Agreement" and denied Jackson Court's waiver request on the basis of Councilman Singleton's vote.

On April 14, 1982, the day before Jackson Court's hearing before the City Council, Jackson Court filed with the Custodian of Notarial Records for the Parish of Orleans, a Condominium Declaration relative

to the Jackson Avenue property which contained provisions for timesharing of individual units among co-owners. On that same day, Jackson Court filed its registration of the proposed condominium timeshare plan with the New Orleans Department of Safety and Permits. Jackson Court's registration was rejected by letter dated May 17, 1982, of Paul May, the City's Zoning Administrator.

The events surrounding the various timeshare moratoria did not take place in a vacuum. Zoning Docket 42/81, initiated by City Council Motion on May 28, 1981, prior to Jackson Court's purchase of the Jackson Avenue property, proposed comprehensive amendments to the City's Comprehensive Zoning Law regarding timesharing, including a total ban on timesharing in the RM–1 and RM–2 zoning districts. A public hearing on Zoning Docket 42/81 was held before the City Planning Commission on August 5, 1981 pursuant to notices published in the Times-Picayune/States-Item on July 15, 22, and 29, 1981. And similarly, Zoning Docket 71/82, initiated by City Council Motion on September 24, 1981, like Zoning Docket 42/81, proposed comprehensive amendments to the City's Comprehensive Zoning Law regarding timesharing, including a total ban on timesharing in RM–1 and RM–2 zoning districts. A public hearing on Zoning Docket 71/82 was held before the City Planning Commission on November 4, 1981 pursuant to notices published in the Times-Picayune/States-Item on October 14, 21 and 28, 1981.[1]

Jackson Court, in its Statement of Uncontested Material Facts, adopted its Stipulation of Facts from the previous state court litigation.[2] Stipulation number 21 provides in part as follows:

> [T]he results of the [City Planning Commission] study lead to the conclusion that the key characteristic of timeshare plans is that they are transient facilities, similar to hotels, and that thus they should not be permitted anywhere a city would

not permit hotels or motels.... [A] characteristic of transients is that they do not have a sense of belonging to the neighborhood, and thus no neighborhood pride and commitment; such transient attitudes can produce effects such as loudness, carelessness, littering and vandalism.... [T]he CPC study further indicated that the New Orleans housing market is in a state where available rental units are in high demand because of low supply and that recent conversions of apartment buildings to condominiums is partially responsible for the poor rental supply....

The end result of Zoning Docket 71/82 was Ordinance 8585 M.C.S. which effected a permanent total ban on timesharing in certain zoning districts (including RM–1 and RM–2 districts) and triggered the dissolution of the various timesharing moratoria including Ordinance 8344. Ordinance 8585 was adopted by the City Council on April 22, 1982 and became effective on April 23, 1982.

Thereafter, Jackson Court sought injunctive and declaratory relief in Louisiana state courts. The trial court rendered judgment against Jackson Court. The Louisiana Fourth Circuit Court of Appeal dismissed Jackson Court's appeal as moot because creditors had foreclosed on Jackson Court's property. Thus, the court could not grant the relief Jackson Court sought. The Court of Appeals did not review the trial court's judgment on the merits. The Louisiana Supreme Court denied writs and the instant suit followed shortly thereafter.

Early in this litigation, the City filed a Motion for Summary Judgment based primarily on the contention that the state court judgment precluded the instant suit under the doctrine of *res judicata.* Another section of this court granted the City's Motion based only on the *res judicata* issue. Jackson Court appealed this ruling to

1. Jackson Court does not dispute these facts in its response to the City's Statement of Uncontested Material Facts. It merely states that it is unable to verify these allegations. *See* Joint Stipulation attached to Plaintiff's response to

City's Statement of Uncontested Material Facts, at paragraph 13. In any case, these facts are not material to the court's analysis.

2. The State court litigation is described *infra.*

the Fifth Circuit Court of Appeals which reversed the district court and held that the doctrine of *res judicata* did not bar the instant suit. After remand, the case was transferred to this section of the court. The City now reurges its alternative grounds for Summary Judgment or Dismissal.

## II.

Jackson Court asserts several claims under the Civil Rights Act, 42 U.S.C. § 1983. The gist of Plaintiff's claims is that the City, through the City Council, acting under color of state law, deprived Jackson Court of its rights, privileges or immunities secured by the United States Constitution and that this deprivation caused Jackson Court to suffer the loss of its Jackson Avenue property. Jackson Court alleges roughly nine supposed constitutional violations:

1. Ordinance 8344 violates the separation of powers provisions of the New Orleans Home Rule Charter and is therefore unconstitutional. (Complaint ¶ s 20–21).

2. Ordinance 8344 and Ordinance 8585 violate the state constitution and zoning enabling laws in that these ordinances regulate ownership instead of use of property. (Complaint ¶ 23).

3. Ordinance 8344 and Ordinance 8585 constitute confiscatory measures without just compensation in violation of the Fifth Amendment to the United States Constitution. (Complaint ¶ 24).

4. Ordinance 8344 violates the Fourteenth Amendment's equal protection clause "in directing its focus with unreasonable and discriminatory particularity on the proscribed status of timeshare condominium ownership." (Complaint ¶ 22).

5. The waiver provision of Ordinance 8344, as applied, violates the Fourteenth Amendment's equal protection clause. (Complaint ¶ 15).

6. Ordinance 8344 violates the 14th Amendment due process or equal protection clauses "in failing to delineate reasonable criteria, as written or applied, governing the decision regarding ultimate allowance of timeshare condominium projects." (Complaint ¶ 22).

7. Ordinance 8344 and Ordinance 8585 deprive Jackson Court of substantive due process. (Complaint ¶ 24).

8. Ordinance 8344 was enacted without notice or hearing mandated by state zoning laws and therefore deprived Jackson Court of procedural due process. (Complaint ¶ 18).

9. The denial of Jackson Court's waiver request pursuant to the "Gentlemen's Agreement" deprived Jackson Court of procedural due process. (Complaint ¶ 15 and Amended Complaint).

The City has raised several grounds for Summary Judgment or Dismissal. Most of the City's contentions can be categorized in one way or another as an attack on the court's subject matter jurisdiction.[3] Additionally, the City argues that Jackson Court's claims are moot or have prescribed.

### A. *Mootness*

The City argues that since Ordinance 8344 expired by its own terms upon passage of Ordinance 8585, Jackson Court's claim that Ordinance 8344 is procedurally defective is moot. That is, even if the City Council wrongfully denied Jackson Court's waiver request or if Ordinance 8344 is procedurally defective, Jackson Court would

---

**3.** The City essentially argues that the court lacks subject matter jurisdiction because each of Plaintiff's constitutional claims is subject to Summary Judgment or dismissal as follows:
1) Plaintiff fails to state a 5th Amendment taking claim or such claim is premature,
2) The subject ordinances do not violate Plaintiff's substantive or procedural due process rights,
3) The subject ordinances do not violate state (and city) laws concerning separation of powers or regulation of ownership of property, and
4) The denial of Plaintiff's waiver request was reasonable.

not be entitled to operate a timeshare plan now, by virtue of Ordinance 8585 which is *not* procedurally defective.

■ The City, however, misconceives the relief sought by Jackson Court. Jackson Court no longer owns the Jackson Avenue property and does not seek to operate a timeshare plan. Rather, it seeks damages under 42 U.S.C. § 1983 for the injuries caused by the City's allegedly wrongful deprivation of its constitutional rights.

Under the mootness doctrine, a federal court lacks subject matter jurisdiction to hear cases in which, due to the parties' changed circumstances, the court can no longer accord any effective relief to the parties. *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). In such a case, a constitutional adjudication would amount to an advisory opinion. This is clearly not the case in the instant litigation. While this court cannot shape any relief which would enable Jackson Court to operate a timeshare plan, this court can award damages to Jackson Court under 42 U.S.C. § 1983 for any wrongful deprivation of Jackson Court's constitutional rights. This is the only relief sought by Jackson Court. Therefore, the City's mootness argument is without merit.

### B. *Prescription*

■ 42 U.S.C. § 1983 does not provide its own statute of limitations. Accordingly, federal courts look to the most analogous statute of limitations in the forum state to determine whether the plaintiff's suit is timely. *Bennett v. City of Slidell*, 697 F.2d 657 (5th Cir.1983), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). The Fifth Circuit has held that Louisiana's one-year prescriptive period governs cases under 42 U.S.C. § 1983. *Id.*; *Jones v. Orleans Parish School Board*, 688 F.2d 342 (5th Cir.1982), *cert. denied*, 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983). The City argues that Jackson Court's earlier state court litigation, which

was filed within the one-year prescriptive period, did not interrupt prescription as to Jackson Court's Section 1983 claims and as such, Jackson Court's Section 1983 claims, which were filed more than two years after the passage of Ordinance 8344 and Ordinance 8585, are prescribed. Thus, the issue presented is whether the state court suit interrupted prescription as to the present suit. If the earlier suit interrupted prescription, the present suit is timely.[4]

The City simply argues that since the injunctive relief sought in the earlier state court suit differs from the monetary relief sought in the present suit, the earlier suit did not interrupt prescription. Under Louisiana law, "[a]ll prescriptions affecting the *cause of action* therein sued upon are interrupted ... by the commencement of a civil action in a court of competent jurisdiction and in the proper venue." La.Rev. Stat.Ann. § 9:5801 (emphasis added).[5] The Louisiana Supreme Court defines "cause of action" as "the material facts which form the basis of the right claimed by the party bringing the action." *Louviere v. Shell Oil Co.*, 440 So.2d 93 (La.1983). The demand or object of a suit is *not* synonymous with the cause of action asserted. *National Surety Corp. v. Standard Accident Insurance Co.*, 247 La. 905, 175 So.2d 263 (1965). The earlier suit differs from the instant suit only in its demand for relief. Essentially the same material facts were alleged in both suits. (*See*, State Court Petition; Attachment C to City's Motion.) In the first suit, Jackson Court claimed that the City's Constitutional violations entitled it to injunctive and declaratory relief. In this suit Jackson Court claims that the same facts entitle it to damages under 42 U.S.C. § 1983. Accordingly, the first suit interrupted prescription as to the cause of action asserted in the second suit. As such, the second suit was timely filed.

### C. *Subject Matter Jurisdiction*

As noted above, most of the City's grounds for Summary Judgment or Dismis-

---

4. The Louisiana Supreme Court denied writs in the state court litigation on June 25, 1984. The instant suit was filed on July 16, 1984.

5. R.S. § 9:5801 has been repealed, but the substance of that section has been incorporated

into La.Civ.Code Ann. art. 3462 (West Supp. 1987). Cases interpreting § 9:5801 continue to be relevant. *See* Comments, La.Civ.Code Ann. art. 3462 (West Supp.1987).

sal are in one way or another an attack on the court's subject matter jurisdiction. The Civil Rights Act, 42 U.S.C. § 1983, does not confer jurisdiction on this court. Section 1983 merely creates a cause of action for violation of a person's rights under the Constitution and laws of the United States. In order to invoke federal jurisdiction under Section 1983, a plaintiff must claim violation of a right secured under the Constitution and laws of the United States and that claim must not be wholly insubstantial or frivolous. *Keniston v. Roberts,* 717 F.2d 1295 (9th Cir.1983); *Williams v. Treen,* 671 F.2d 892, 900 (5th Cir.1982) *cert. denied,* 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983). Therefore, if Jackson Court's allegations present no constitutional violations, then this court is without jurisdiction to grant relief and Jackson Court's only recourse is to pursue its claims in Louisiana state courts.

### 1. *State Law Violations*

Jackson Court contends that Ordinance 8344 and Ordinance 8585 violate the Louisiana Constitution and certain provisions of the Louisiana Civil Code in that these ordinances purport to regulate ownership of property, not simply the use of property as allowed under state zoning laws. Similarly, Jackson Court argues that Ordinance 8344 violates the separation of powers provisions of the New Orleans Home Rule Charter. From these allegations Jackson Court leaps to the conclusion that its rights under the United States Constitution have been violated.

It is well established, however, that the mere violation of state laws does not necessarily infringe rights secured by the federal Constitution. *Snowden v. Hughes,* 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944); *McDowell v. Texas,* 465 F.2d 1342, 1346 (5th Cir.) *aff'd. en banc,* 465 F.2d 1349 (5th Cir.1971), *cert. denied* 410 U.S. 943, 93 S.Ct 1371, 35 L.Ed.2d 610 (1973). In *McDowell,* the Fifth Circuit held that no federal constitutional right was implicated when a state board fired a state employee contrary to state law for local political considerations. The court explained:

The termination of [plaintiff's] status as a State employee rests solely on a claim that his employers violated State statutes and local policies in effecting his termination. The right to employment by a State, in itself, is not a right secured by the Consitution or by the laws of the United States; thus, even an invalid or an improper discharge from such an office, unaccompanied by some more precise claim of *federal right* than a general claim of lack of due process, is not the sort of deprivation of a right ... which is secured by the Constitution of the United States ... Cases of this genre constitute uniquely State causes of action. As such they are peculiarly within the realm of State Courts.... Even though it is patent that the amorphous and protean contours of substantive due process under the Fourteenth Amendment extend to all citizens in all sorts of conditions and circumstances, it is equally axiomatic that federal jurisdiction under [28 U.S.C.] § 1343(3) and 42 U.S.C. § 1983 cannot be extended to that purely local squabble by the mere invocation of the generalized protection which these words of the amendment confer.

465 F.2d at 1345–46 (citations and footnotes omitted; emphasis in original).

A case more in point is *Love v. Navarro,* 262 F.Supp. 520 (C.D.Cal.1967), wherein the district court held that a city's payment of public funds for a road construction project without an appropriation as required by the city charter did not state a claim of constitutional dimension. The court concluded that "[a] right to have state (or city) laws obeyed is a state, not a federal, right." *Id.* at 523. Accordingly, Jackson Court's assertion that Ordinance 8344 violates Louisiana law and the New Orleans City Charter does not implicate a federal constitutional right.

### 2. *Fifth Amendment Taking*

In paragraph 24 of the Complaint, Jackson Court offers the conclusory allegation that Ordinance 8344 and Ordinance 8585 "constituted a confiscatory measure that was the equivalent of a taking of

property of plaintiff without due process of law." The City argues that Jackson Court's Fifth Amendment taking claim is premature or that there was no "taking". In order to state a taking claim in cases where the subject property has not been directly condemned under the state's power of eminent domain, the property owner must allege that the challenged regulation deprives the owner of virtually all economically viable use of the property. *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The Eleventh Circuit has noted that "[n]either deprivation of the most beneficial use of the land, nor a severe decrease in the value of property, measures up to an unlawful taking." *Nasser v. City of Homewood*, 671 F.2d 432, 438 (11th Cir. 1982) (citations omitted).

■ Nowhere in the Complaint or Amended Complaint does Jackson Court allege that it has been deprived of all viable economic use of its property. In fact, Jackson Court alleges that the property was being utilized as an apartment building at the time of purchase (Complaint ¶ 5) and there is nothing to indicate that the property could no longer be utilized as such. Rather, Jackson Court's allegation is essentially that it was deprived of what it perceived to be the most profitable exploitation of its property. This alone cannot be the basis for a taking claim. Accordingly, the taking claim should be dismissed.

■ Even if Jackson Court has stated a taking claim, the City is correct in its assertion that that claim is premature under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson County*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson County*, the Supreme Court held that a Fifth Amendment taking claim is premature where the landowner whose property has been taken has not sought compensation under state procedures for obtaining compensation. Louisiana law recognizes a cause of action for inverse condemnation under which an aggrieved landowner may seek compensation and damages for the wrongful appropriation of its property by the state or a political subdivision of the state. *Cerniglia v. City of New Orleans*, 234 La. 730, 101 So.2d 218 (1958); *Trustees Under Will of Pomeroy v. Town of Westlake*, 357 So.2d 1299 (La.App. 3rd Cir.), *writs denied*, 359 So.2d 205 (La.1978); *Jarnagin v. Louisiana Highway Commission*, 5 So.2d 660 (La.App. 2nd Cir.1942). Jackson Court does not allege that it has availed itself of Louisiana's procedures for obtaining compensation for an unlawful "taking". Thus Jackson Court's Complaint fails to state a taking claim under the Fifth Amendment, or if it states such a claim, that claim is premature.

### 3. *Vagueness*

■ Jackson Court also alleges that Ordinance 8344 is unconstitutionally vague. The court is hard pressed to discern the factual basis of this claim. Nowhere in the Complaint or Amended Complaint nor even in any supporting memoranda does Jackson Court substantiate this claim. The definition of the prohibited "timeshare plans" is spelled out in detail in Section 2 of the Ordinance. Section 3 of the Ordinance, provides that the Council "may waive the provisions of this Ordinance with respect to [an aggrieved] party upon a showing that he would experience undue hardship and that the character of the neighborhood involved would not be adversely affected."

A statute is unconstitutionally vague if the terms of the statute are so indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Reeves v. McConn*, 631 F.2d 377, 383 (5th Cir.1980). To the contrary, the court finds the language of Ordinance 8344 clear and unambiguous in both its meaning and its application. Therefore, Jackson Court's vagueness claim should be dismissed with prejudice.

### 4. *Procedural Due Process*

Jackson Court's most substantial constitutional claim is that the City's enactment of Ordinance 8344 and subsequent denial of Jackson Court's waiver request denied it procedural due process. There are three

hurdles Jackson Court must clear to establish each of these claims. First, Jackson Court must establish that it was deprived of a constitutionally protected property interest. Second, Jackson Court must establish that the governmental mechanism by which it suffered the deprivation is one subject to the strictures of procedural due process. And third, Jackson Court must establish that it did not receive the process it was due. For the reasons that follow, the court finds that Jackson Court cleared none of these hurdles.

#### a. Protected Property Interest

■ In order to establish a due process violation (either procedural or substantive), Jackson Court must show that the enactment of Ordinance 8344 deprived it of a protected property interest encompassed in the Fourteenth Amendment due process clause. *McCachren v. U.S. Department of Agriculture, Farmers Home Administration,* 599 F.2d 655 (5th Cir.1979). The Supreme Court explains that property interests, for purposes of the due process clause, are created and their dimensions are defined by existing rules of understanding that stem from an independent source such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). While the existence of a property interest must be decided initially by reference to state law, federal constitutional law determines whether that interest rises to the level of an entitlement protected by the due process clause. *Shawgo v. Spradlin,* 701 F.2d 470 (5th Cir.1983), *cert. denied, sub nom, Whisenhunt v. Spradlin,* 464 U.S. 965, 103 S.Ct. 1448, 78 L.Ed.2d 345 (1983). In order to have a protected property interest, a person must have more than an abstract need or desire for it or a unilateral expectation of it; he must have a legitimate claim of entitlement to it. *Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Thus, the court must first turn to Louisiana law to determine whether Jackson Court has a property interest protected by the due process clause.

#### i. property interest related to enactment of Ordinance 8344

Jackson Court's property interest in developing its property as a timeshare condominium is created and its dimensions are defined, at least initially, by Article I § 4 of the Louisiana Constitution of 1974 which provides:

> Every person has the right to acquire, own, control, use, enjoy, protect and dispose of private property. This right is *subject to reasonable statutory restrictions and the reasonable exercise of the police power.*

La. Const. art. I § 4 (1974) (emphasis added). The Louisiana Constitution further provides that local governmental subdivisions, like the City of New Orleans, may,

> "... adopt regulations for land use, zoning and historic preservation ... and adopt standards for use, construction, demolition, and modification of areas and structures."

La. Const. art. 6 § 17 (1974). The City of New Orleans requires that persons wishing to develop property under a condominium regime file a registration for such use with the Department of Safety and Permits. Article 201–A of Ordinance No. 17,525 C.C.S., the Building Code of the City of New Orleans (as amended by Ordinance No. 8007 M.C.S. (January 29, 1981)) provides in part:

> [W]henever ... an existing building shall be converted into condominiums for use and ownership as such, that change in status shall be reported to and registered with the Director of the Department of Safety and Permits.... If any work on the building is contemplated for the purpose of conversion, a building permit, which shall state the intention to convert to a condominium shall be applied for and obtained.

Therefore, Jackson Court's right to develop its property as a timeshare condominium is subject to registering for that use with the City.

In addition to the City's requirements, state statutes regulating condominiums and timesharing provide that a condominium regime or timeshare plan is established

by filing a condominium or timeshare declaration in the conveyance records of the parish in which the property is located. The Louisiana Condominium Act, La.Rev. Stat.Ann. § 9:1121.101 et seq. (West Supp. 1987); The Louisiana Timesharing Act, La. Rev.Stat.Ann. § 9:1131.4 (West Supp.1987). With respect to timesharing, the Louisiana Timesharing Act provides:

A timeshare plan shall be *created* by the execution and recordation of a timeshare declaration. The timeshare declaration shall be filed for registry in the conveyance records in the parish or parishes in which the timeshare property is located.

La.Rev.Stat.Ann. § 9:1131.4(B) (West Supp. 1987) (emphasis added). Therefore under state law, Jackson Court's right to develop its property as a timeshare property is not "created" until a timeshare declaration is executed and recorded. This court's primary inquiry is whether under state law Jackson Court had a 'legitimate claim of entitlement' to develop its property as a timeshare condominium at the time the City enacted Ordinance 8344. Or in other words, when did Jackson Court's interest in developing a timeshare condominium cease to be a mere 'unilateral expectation' and rise to the level of a securely held and enforceable right under state law? The answer is simple: Never.

■ It is undisputed that aside from its 'unilateral' activities of renovating its property and preparing to offer timeshare interests for sale, Jackson Court did nothing to secure its right under state law to develop its timeshare condominium project until April 14, 1982, more than five months after Ordinance 8344 had been enacted and just ten days before Ordinance 8585 became effective. On April 14, 1982, Jackson Court filed its condominium registration with the Department of Safety and Permits and recorded its condominium and timeshare declaration in the conveyance records for Orleans Parish. Under state law, Jackson Court's timeshare plan was "created" on April 14, 1982. But, as of October 22, 1981, Jackson Court's interest in developing a timeshare condominium project was no more than a unilateral expectation. Therefore, the enactment of Ordinance

8344 on October 22, 1981 did not deprive Jackson Court of a property interest protected by the due process clause of the Fourteenth Amendment.

Moreover, Jackson Court's interest in its timeshare development did not become protected upon filing its declaration in the conveyance records on April 14, 1982. That is, even though Jackson Court's timeshare plan was created on April 14, 1982, its right to develop or implement that plan was subject to the City's police power as reflected in Ordinance 8344 which, as discussed below, was a constitutionally reasonable exercise of that power. Thus, Jackson Court's interest never became a securely held right under state law entitled to the protections of the Fourteenth Amendment.

ii. *property interest related to waiver hearing*

Jackson Court also alleges that it was denied procedural due process by the City Council's allegedly arbitrary denial of its waiver request. Plaintiff alleges that all previous waiver requests had been granted and that the Council, by voting according to the "Gentlemen's Agreement", acted unreasonably and arbitrarily in denying its waiver request. As with the procedural due process claim involving the adoption of Ordinance 8344, the analysis of Jackson Court's procedural due process claim with respect to its waiver request begins with an assessment of Jackson Court's property interests. The issue presented is whether Jackson Court had a legitimate claim of entitlement to the waiver. This issue turns on the level of discretion vested in the Council to deny the waiver. An analogy can be drawn to cases in which tenured employment has been recognized as a protected property interest. *See, Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In *Lyznicki v. Board of Education, School District 167, Cook County, Illinois,* 707 F.2d 949 (7th Cir.1983), plaintiff complained that the school board deprived him of a property interest without due process when it demoted him from his position

as principal to a regular teaching position. It was undisputed that the renewal of plaintiff's contract as a principal was purely discretionary. Plaintiff argued, however, that a state statute which required notice and a hearing before reclassifying or demoting a principal created a protected property interest. The court rejected this argument. The court explained:

Although the statute confers a right to a hearing, no standards are prescribed for the board to follow at the hearing; it seems it can reclassify a principal after expiration of his yearly contract, for any reason or no reason. It is hard to believe that a right to a particular office is created by a statute that allows the "right" to be terminated in the employer's discretion.... A mere right to notice and a hearing, which places no more constraint on the employer's freedom of action than is inherent in having to confront the employee in a public forum, does not change the essential character of the employment relationship as one of employment at will; it does not convert it into a form of tenure employment and thus create a Fourteenth Amendment property right.

*Id.* at 952. In *Lyznicki* the state law procedural protections did not limit the Board's discretion in refusing to renew the plaintiffs' contract. As such, those state law protections did not themselves give rise to a protected property interest. Thus, the main focus of this court's inquiry must be the level of discretion vested in the City Council to *deny* Jackson Court's waiver request. To the extent the Council had discretion to deny the waiver, Jackson Court had no protected property interest.

Further support for this analysis of property interests is found in cases involving building permits. *See e.g., Sullivan v. Town of Salem,* 805 F.2d 81 (2nd Cir.1986) (Property interest found where municipality lacked discretion to deny permit); *Scott v. Greenville County,* 716 F.2d 1409 (4th Cir.1983); *Gunkel v. City of Emporia, Kansas,* 634 F.Supp. 345 (D.Kan.1986). (No property interest found where municipality could revoke permit without cause.) In *Scott,* the plaintiff, a real estate developer, applied for a building permit to construct a low-income multiple family housing project. At the time plaintiff applied for the permit, plaintiff's proposed development complied with all local zoning regulations. Subsequent to plaintiff's application, the County Council enacted a building permit "freeze order" which affected the area of plaintiff's proposed development. Plaintiff alleged that the freeze order deprived plaintiff of a protected property interest in the building permit without due process. The Fourth Circuit agreed. The court noted that under state law, plaintiff was "entitled" to the permit upon presentation of an application and plans showing a use expressly permitted under the then-current zoning ordinance. 716 F.2d 1409, 1418. In other words, the permit issuing agency of Greenville County had no discretion to deny issuance of the permit. Thus, the Fourth Circuit concluded that the plaintiff had a protected property interest in the permit. *Id.*

In the instant case, though Ordinance 8344 and Louisiana law provided parameters within which the City Council could exercise its discretion, the Council still had wide discretion to deny the waiver, and as such, Jackson Court had no protected property interest in the waiver. The Ordinance provides that an aggrieved party may appeal to the Council, "and the Council *may* waive the provisions of this Ordinance with respect to that party upon a showing that he would experience undue hardship and that the character of the neighborhood involved would not be adversely affected." Ordinance 8344 § 3 (emphasis added). Nothing in the Ordinance itself limits the reasons for which the Council could deny a waiver request. The showing required by the Ordinance is not a limitation on the Council's discretion to *deny* a waiver request; it is a limit on the Council's discretion to *grant* such a request. Until the petitioner makes the requisite showing, the Council is without discretion to grant a waiver.

The only limitation on the Council's discretion is the state law requirement that the denial not be arbitrary or capricious. *Kel-Kan Investment Corp. v. Village of*

*Greenwood,* 393 So.2d 818 (La.App. 2d Cir. 1981). This is not a significant limitation on the Council's discretion. It merely requires that the Council point to some reasonable, non-discriminatory basis for its decision. There are several conceivable reasonable bases for the Council's decision including neighborhood opposition to the project, the findings of the City Planning Commission on timesharing, or even the impending passage of Ordinance 8585 which would prohibit further timesharing in the area of Jackson Court's project. Thus, this court concludes that Jackson Court had no protected property interest at stake with respect to the waiver hearing. The mere fact that state law sets minimal substantive limits on permissible Council action does not transform an otherwise essentially unilateral expectation of obtaining a waiver into a property interest protected by the Fourteenth Amendment. Accordingly, with respect to both the enactment of Ordinance 8344 and Jackson Court's waiver request the court finds that as a matter of law Jackson Court had no securely held constitutionally protected property interest.

b. *Assuming Jackson Court had a Property Interest Affected by Both the Enactment of Ordinance 8344 and the Denial of the Waiver, Were the Deprivations the Result of Legislative or Administrative Processes, i.e., Were They Subject to the Strictures of Procedural Due Process?*

The procedural protections of due process do not extend to all deprivations of otherwise protected property interests. Generally, deprivations which occur as a result of a legislative enactment are not subject to the procedural requirements of due process. *Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed.2d 372 (1915); *United States v. LULAC,* 793 F.2d 636 (5th Cir.1986); *Nolan v. Ramsey,* 597 F.2d 577 (5th Cir.1979); *Q.C. Construction Co. v. Gallo,* 649 F.Supp. 1331 (D.R.I.1986). The Supreme Court, in *Bi-Metallic,* explained this constitutional principle:

> Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.... There must be a limit to individual argument in such matters if government is to go on.

239 U.S. at 445, 36 S.Ct. at 142.

A case in point is *Q.C. Construction Co. v. Gallo,* 649 F.Supp. 1331 (D.R.I.1986). In *Q.C. Construction Co.,* a real estate developer brought suit under 42 U.S.C. § 1983 alleging that as a result of a residential building moratorium, the defendant city had deprived plaintiff of its property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Prior to the enactment of the moratorium ordinance the plaintiffs had purchased over thirty lots of land for the purpose of residential development. Plaintiffs applied for and obtained building permits for twelve of the lots.

In response to chronic problems with the city's sewer system in the area of plaintiff's development, the city council passed a resolution stating that no building permits would be issued in the subject area until the sewer problems were rectified. It was undisputed that plaintiffs had no notice and no opportunity to be heard before the moratorium was enacted. The plaintiffs later applied for and were refused building permits for fifteen lots in the area affected by the moratorium. The court summarily rejected plaintiffs' procedural due process claim holding that the procedural due process requirement of notice and hearing did not apply to a legislative body in the performance of its legislative functions. *Id.* at 1335. Likewise, to the extent the enactment of Ordinance 8344 and the denial of Jackson Court's waiver request were legis-

lative functions, Jackson Court had no right to procedural due process.

It is well established in the Fifth Circuit that zoning decisions, of either general or particular impact, are considered legislative actions for the purposes of constitutional due process. *Shelton v. City of College Station,* 780 F.2d 475 (5th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), *and* —— U.S. ——, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986); *South Gwinnett Venture v. Pruitt,* 491 F.2d 5 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).

#### i. *enactment of Ordinance 8344*

 It is beyond cavil that the enactment of Ordinance 8344 was a legislative decision. The Ordinance had a generalized, city-wide impact and was based on general facts concerning the desirability of time-sharing plans as a whole. *See, Developments in the Law—Zoning,* 91 Harv.L. Rev. 1427, 1510–11 (1978); *United States v. LULAC,* 793 F.2d 636, 648 (5th Cir.1986); *Nolan v. Ramsey,* 597 F.2d 577, 580 (5th Cir.1979). Thus, Jackson Court had no procedural due process rights with respect to enactment of Ordinance 8344.

#### ii. *the waiver hearing*

Furthermore, the Fifth Circuit has made it clear that even specific zoning decisions are legislative in character and not subject to the requirements of procedural due process. *See, Shelton,* 780 F.2d 475, 480 (5th Cir.1986) (*en banc*); *South Gwinnett Venture,* 491 F.2d 5, 7 (5th Cir.1974) (*en banc*). In *South Gwinnett Venture,* plaintiffs' procedural due process claim arose out of a zoning commission's denial of a rezoning application without statement of reasons and by recourse to evidence which was not in the record. The Fifth Circuit Panel held that such "administrative" action did not "adhere to concepts of minimal due process" and had long been condemned. 482 F.2d 389, 391 (5th Cir.1973). On rehearing *en banc,* the Fifth Circuit Court reversed the Panel and held that for purposes of due process, there is "no viable distinction between zoning board functions involved in the adoption of a comprehensive zoning plan and those exercised in the reclassification of a specific piece of property under an existing plan." 491 F.2d 5, 7. Furthermore, since the *Shelton* court characterized the actions of an *appointed* zoning board as legislative, then in the instant suit, the case for characterizing the Council's actions as legislative is even stronger since the City Council is an *elected,* not appointed body. *See Shelton,* 780 F.2d 475. Therefore, this court concludes that the denial of Jackson Court's waiver request, like the enactment of Ordinance 8344, was a legislative decision not subject to procedural due process requirements.

In summary then, the court finds that Jackson Court had no protected property interest at stake in either the City's enactment of Ordinance 8344 or its denial of Jackson Court's waiver request. This finding alone is sufficient to support dismissal of Jackson Court's procedural (and substantive) due process claims. Moreover, the court's finding that the enactment of Ordinance 8344 and denial of the waiver request were legislative decisions further supports the dismissal of Jackson Court's procedural due process claims. But out of an abundance of caution, the court will consider whether Jackson Court received the process it was due in both the enactment of Ordinance 8344 and the denial of its waiver request.

#### c. *Assuming Jackson Court Was Deprived of Constitutionally Protected Property Interests in Circumstances that Required the Constitutional Minimum Due Process, Just What Process Was it Due?*

 Jackson Court alleges that the enactment of Ordinance 8344 without prior notice and opportunity to be heard denied it due process. The court finds that the failure to provide notice and a hearing prior to the Council's adoption of Ordinance 8344 did not deprive Jackson Court due process because of the waiver provision in the Ordinance. That is, Jackson Court was accorded a "post-deprivation" hearing. Jackson Court's claims with respect to enactment of Ordinance 8344 and denial of its waiver

request then converge presenting a single issue: Did Jackson Court receive a "fair" hearing? Jackson Court alleges that it did not receive a fair hearing since the City Council decided to deny its waiver request based on the "Gentlemen's Agreement", and the Councilman, whose vote determined the outcome, allegedly relied only on neighborhood opposition to Jackson Court's request in casting his vote against the request. For purposes of this Motion only, the court finds as a fact that Councilman Singleton relied on neighborhood opposition to the waiver and the other Councilmen voted pursuant to the Gentlemen's agreement in denying the waiver request.

### i. *enactment of Ordinance 8344*

■ One thing is certain at the outset, Jackson Court's lone assertion that Ordinance 8344 was enacted without the notice or hearing required by state law, be it the Louisiana Constitution, Louisiana zoning laws or the City Charter, will not carry the day as far as the United States Constitution is concerned. It is now well established that the mere failure to follow state law procedures will not support a claim under the United States Constitution. *Smith v. City of Picayune*, 795 F.2d 482 (5th Cir.1986); *Stern v. Tarrant County Hospital District*, 778 F.2d 1052 (5th Cir. 1985) (*en banc*), *cert. denied*, —— U.S. ——, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). This is because the procedural protection afforded by the Fourteenth Amendment is independent of state law procedural protection. A state may provide greater procedural protection than is required under the United States Constitution. Thus, even if a state fails to follow its own procedures, the United States Constitution is not offended unless the procedural protection actually afforded falls short of the constitutional standard.

In *City of Picayune*, 795 F.2d 482, the Fifth Circuit held that a city's enactment of a zoning ordinance without the notice and hearing mandated by the state zoning laws and the municipal charter could not by itself support a procedural due process claim. The court did not reach the issue of what would be required in lieu of the state

law notice and hearing since the plaintiff had received other notice and a hearing and did not claim that the notice and hearing he received were constitutionally deficient. *Id.* at 487–88. Unlike the plaintiff in *City of Picayune*, Jackson Court alleges that not only did it not receive the state required notice and hearing but also it was denied due process in the hearing it eventually received before the City Council.

The City urges *Schafer v. City of New Orleans*, 743 F.2d 1086 (5th Cir.1984) as dispositive of the procedural due process claims. Jackson Court, however, correctly notes the distinction between *Schafer* and the instant case. Like *City of Picayune*, in *Schafer* there was little or no argument that the notice and hearing actually accorded the plaintiff was constitutionally deficient. Rather, plaintiff claimed only that the enactment of a zoning moratorium without the notice and hearing required under state law violated its due process rights. The *Schafer* court held that state law notice and hearing requirements did not apply to zoning moratoria and that procedural due process was satisfied since plaintiff had received actual notice of the introduction of the ordinance and had appeared and argued against the ordinance *prior* to its adoption. The present case is distinguishable since it is undisputed that Jackson Court received no notice of hearing nor a hearing prior to the City Council's adoption of Ordinance 8344. Nothing published on the day the Council voted on Ordinance 8344 indicated that the City Council would hold hearings and vote on the Ordinance that same day. In fact, the publication on the morning of October 22, 1981 was not a "notice" but rather the official "minutes" of a previous City Council meeting. As such, the court must examine whether under these circumstances Jackson Court received the minimum process it was due.

The due process clause of the Fourteenth Amendment and jurisprudence interpreting it do not fix a rigid procedural standard to be followed in all cases. And while some sort of notice and meaningful hearing is required before finally depriving a person

of a protected liberty interest, the exact nature and timing of that notice and hearing depend on the circumstances of each case. In evaluating what process is due in each case, this court must weigh several factors: (1) the importance of the plaintiff's interest; (2) the risk of an erroneous deprivation of those interests through the procedures used and the probable value of additional procedures; and (3) the government's interest including the fiscal and administrative burden that additional procedures would entail. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Williams v. Taylor,* 677 F.2d 510 (5th Cir.1982).

Jackson Court complains first that it was entitled to a "pre-deprivation" hearing before Ordinance 8344 was enacted. While a person is ordinarily entitled to some sort of hearing prior to deprivation of a property interest, certain extraordinary circumstances may justify postponing notice and an opportunity for a hearing. *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Delahoussaye v. Seale,* 788 F.2d 1091 (5th Cir.1986); *Breath v. Cronvich,* 729 F.2d 1006, 1010 (5th Cir.) *modified on other grounds,* 734 F.2d 225 (5th Cir.1984), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984). Weighing the factors set out in *Mathews* and considering the extraordinary circumstances recognized in *Fuentes* and *Delahoussaye,* and assuming that Jackson Court was entitled to procedural due process protections, this court finds that the enactment of Ordinance 8344 without prior notice or hearing did not deny Jackson Court procedural due process.

Though Jackson Court's interest in developing its property as a timeshare condominium project may be significant, the City had an equally significant interest in maintaining residential integrity. Moreover, the risk of an erroneous deprivation was mitigated by the City's provision of an appeals mechanism, the waiver provision. Finally, under the circumstances of this case, the very purpose of the Ordinance would be defeated if the City were required to provide notice and a hearing to all persons affected by the Ordinance prior to its adoption. The preamble to the Ordinance indicates that the City was concerned that the "proliferation of timeshare plans throughout the City prior to the consideration of the recommendations of the City Planning Commission might threaten the character of residential neighborhoods." Time was clearly of the essence in this matter. The City was not simply addressing the problems associated with Jackson Court's project but the problems associated with timesharing on a city-wide basis. To provide individual hearings to all persons affected would, in all likelihood, have engendered a rush to the Council thereby delaying the enactment of Ordinance 8344 and defeating its expressed purpose.[6] The court finds that these circumstances were sufficiently "extraordinary" to justify postponing all individual hearings until after enactment of Ordinance 8344. Therefore, the lack of prior notice and hearing, in itself, did not deprive Jackson Court due process.

### ii. *the waiver hearing*

Jackson Court next complains that it did not receive a fair hearing before the City Council due to the "Gentlemen's Agreement" and Councilman Singleton's reliance on neighborhood opposition to Jackson Court's project. Due process requires that a person deprived of a property interest have a meaningful opportunity to be heard before an impartial tribunal. *Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976); *Corstvet v. Boger,* 757 F.2d 223 (10th Cir.1985); *Price v. City of Junction, Texas,* 711 F.2d 582 (5th Cir.1983). In order to support a claim of partiality or bias, Jackson Court must allege some sort of actual unfairness or partiality, such as a "personal or financial stake amounting to a conflict of interest." *Price,* 711 F.2d at 590. Like the court in *Price,* this court will not presume that the Council members would not act impartially

---

**6.** These problems also reflect the legislative character of Ordinance 8344 and the obvious rationale for not according procedural protection to legislative enactments.

simply because they had passed the moratorium ordinances prohibiting timesharing in residential areas.

The Gentlemen's Agreement itself does not exhibit a constitutionally forbidden bias or impartiality on the part of the City Council. There is no suggestion that the Councilmen who followed the lead vote of Councilman Singleton were biased or had some personal stake in the outcome of Jackson Court's waiver request. Rather, the Agreement merely reflects a deference to and recognition of Councilman Singleton's familiarity with matters affecting his constituency. It reflects a belief that in largely discretionary matters which require consideration of the localized impact of a particular decision, the Councilman whose constituency will be most affected is in the best position to guide the Council's exercise of its discretionary power. This reflects not bias, but practical wisdom.

Furthermore, Jackson Court's allegation that Councilman Singleton had previously decided to vote against the waiver on the basis of neighborhood opposition, does not imply that he could not fairly hear the merits of Jackson Court's appeal. In *Hortonville*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1, the Supreme Court explained that in the absence of some showing that the decisionmaker is not capable of fairly judging the merits of a claim, the decisionmaker cannot be disqualified "simply because he has taken a position, even in public, on a policy issue related to the dispute...." *Id.* 426 U.S. at 493, 96 S.Ct. at 2314. There were essentially two factual inquiries before the Council on April 15, 1982. First, whether Jackson Court would experience undue hardship. And second, whether the proposed project would have an adverse impact on the neighborhood. Neighborhood opposition to the project is a telling indication of the project's adverse impact on the neighborhood. At most, Councilman Singleton's statements indicate his belief that no showing of undue hardship could overcome the adverse impact of the project on the neighborhood.

Finally, as noted above in this court's discussion of protected property interests, the denial of the waiver was a discretionary matter. That is, even if Jackson Court proved undue burden and no significant impact on the neighborhood, the Council was still free to deny the waiver for any number of conceivable reasons including neighborhood opposition to the waiver. Thus, Councilman Singleton's reliance on neighborhood opposition infers no bias on his part with respect to the merits of Jackson Court's evidence of undue burden and adverse impact. Accordingly, the court finds as a matter of law that Jackson Court received all the process it was due under the Fourteenth Amendment to the United States Constitution.

### 5. *Substantive Due Process*

■ Jackson Court alleges at various points in its Complaint that Ordinance 8344 and Ordinance 8585 are arbitrary, capricious and unreasonable thereby denying it substantive due process. (Complaint ¶s 23, 24). Jackson Court also raises a substantive due process claim alleging that the Council's denial of its waiver request was arbitrary and capricious. As discussed above, Jackson Court had no protected property interest in either its timesharing project or its waiver request and as such is not entitled to the protection of the Fourteenth Amendment due process clause. But even if Jackson Court had such a protected property interest, the subject Ordinances and the Council's denial of the waiver request easily pass Constitutional muster under *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), and —— U.S. ——, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). The issue is simply whether the City's actions were rationally related to a legitimate state objective.

In *Shelton*, property owners sued the City of College Station and several of its zoning officials alleging that the city's refusal to grant a zoning variance denied the owners substantive and procedural due process. The district court granted summary judgment in favor of the defendants and the plaintiffs appealed. On appeal, a panel of the Fifth Circuit Court of Appeals af-

firmed the summary judgment on the procedural due process claim but reversed the summary judgment on the substantive due process claim finding a genuine issue of material fact as to whether the denial of the zoning variance was reasonably based on fact. 754 F.2d 1251, 1256 (5th Cir.1985). On rehearing *en banc*, the Fifth Circuit reversed the panel on the substantive due process claim and affirmed the district court. 780 F.2d at 486.

The court characterized the zoning board's denial of a zoning variance as a legislative act. In the context of substantive due process analysis, this characterization determines the method and scope of the court's review of the facts underlying the zoning decision at issue. The *Shelton* court explained that those challenging a legislative decision "must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." 780 F.2d at 479 (quoting, *Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979)). The court further explained that the review of legislative decisions under the Fourteenth Amendment is limited to whether the decisions were arbitrary and capricious. This requirement of substantive due process "is met if there is any conceivable rational basis for the zoning decision." *Id.* at 477. The court noted that federal judicial interference with legislative decisions "is proper only if the governmental body could have had no legitimate reason for its decision." *Id.* at 483. The "key inquiry," the court said, "is whether the question is 'at least debatable,' . . . . If it is, there is no denial of substantive due process as a matter of federal constitutional law." *Id.* (*quoting Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981)).

Applying this minimal standard to the present case, it is clear that Ordinance 8344 and Ordinance 8585 do not violate Jackson Court's substantive due process rights. In searching out a conceivable rational basis for the enactment of Ordinance 8344, the court need look no further than the Ordinance itself. The preamble to Ordinance

8344 explains that since the City Council had previously directed the City Planning Commission to study "timeshare plans with regard to their effect on residential integrity," and "[w]hereas the proliferation of timeshare plans throughout the City prior to the consideration of the recommendations of the City Planning Commission might threaten the character of residential neighborhoods," the City Council decided to enact a moratorium on timeshare plans in certain zoning districts city-wide. The Fifth Circuit has held that a moratorium similar to the instant moratorium was rationally related to a significant public purpose. *Schafer v. City of New Orleans*, 743 F.2d 1086 (5th Cir.1984).

In *Schafer*, the New Orleans City Council had enacted a moratorium ordinance prohibiting issuance of building permits for fast food restaurants in a one block area of the City. The Fifth Circuit noted that the moratorium played an important role in municipal planning by maintaining the "status quo" during the pending study of an area and its needs, and by preventing "a dramatic increase in the number of potentially adverse uses." *Id.* at 1090. Thus, the court concluded that the ordinance served a significant public purpose and as such, did not violate the plaintiff's substantive due process rights. *Id.* The analogy to the instant case is patent. The same concerns and objectives discussed in *Schafer* are reflected on the face of Ordinance 8344. Ordinance 8344 clearly does not violate Jackson Court's substantive due process rights.

With respect to Ordinance 8585, the court may likewise find that there was a conceivable rational relationship between Ordinance 8585 and legitimate municipal zoning objectives. Jackson Court in its Statement of Uncontested Material Facts, adopted its Stipulation of Facts from the previous state court litigation. Stipulation number 21 provides in part as follows:

[T]he results of the [City Planning Commission] study lead to the conclusion that the key characteristic of timeshare plans is that they are transient facilities, similar to hotels, and that thus they should

not be permitted anywhere a city would not permit hotels or motels.... [A] characteristic of transients is that they do not have a sense of belonging to the neighborhood, and thus no neighborhood pride and commitment; such transient attitudes can produce effects such as loudness, carelessness, littering and vandalism.... [T]he CPC study further indicated that the New Orleans housing market is in a state where available rental units are in high demand because of low supply and that recent conversions of apartment buildings to condominiums is partially responsible for the poor rental supply....

That the protection of residential integrity is a legitimate objective of zoning regulation is beyond debate. The Supreme Court has repeatedly held that a city may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city. *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Young v. American Mini-Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Thus, it is clear that the protection of residential neighborhoods from the noise, littering and vandalism which might be associated with transient uses of residential property is a perfectly legitimate objective for the City to pursue.

The conclusions reached by the City Planning Commission provide not just a conceivable rational basis but an actual articulated basis from which the City Council could conclude that the ban on timesharing in residential areas was rationally related to the City's legitimate zoning objectives. This court's review of the legislative facts underlying enactment of Ordinance 8585 is limited to determining whether the City Council could not conceivably believe the City Planning Commission's conclusions regarding timesharing. The court finds that the City Council could have reasonably believed the City Planning Commission's con-

clusions to be true. At the very least, the court finds that the matter is one open to "debate." Therefore, as a matter of federal constitutional law, Ordinance 8585 does not violate substantive due process.

Finally, with respect to the Council's denial of the waiver request, this court need not look very far to find a conceivable rational basis to support the Council's decision. The primary concern reflected in the Ordinance and in the waiver provision itself was the impact of timesharing on residential neighborhood integrity. As noted above, this is a legitimate state concern. The Council could have conceivably believed that denying Jackson Court's waiver request would preserve residential integrity in the affected area, even if the sole basis for its decision was neighborhood opposition to Jackson Court's project. At the very least, the question is debatable and this court cannot substitute its judgment for that of the Council. As such, Jackson Court's claims that the subject Ordinances and the waiver denial violate substantive due process under the Fourteenth Amendment must be dismissed as a matter of law.

### 6. *Equal Protection*

 Jackson Court alleges that Ordinance 8344 violates the equal protection clause of the Fourteenth Amendment "in directing its focus with unreasonable and discriminatory particularity on the proscribed status of timeshare condominium ownership." (Complaint ¶ 22). Jackson Court also alleges that, as applied, the waiver provision of Ordinance 8344 violates the equal protection clause since all previous waiver requests under similar timeshare moratoria had been granted. The analysis of an equal protection claim is essentially the same as that of a substantive due process claim. *Horizon Concepts, Inc. v. City of Balch Springs*, 789 F.2d 1165 (5th Cir.1986). Unless the statute's classification affects fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, the statute is presumed to be constitutionally valid and the challenged classification need only be rationally related to a legitimate state objective. *City of New*

*Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). Ordinance 8344 involves neither fundamental personal rights nor inherently suspect classifications. Thus, this court's only concern is whether the classification of timeshare condominium projects is rationally related to the City's legitimate interest in preserving residential integrity. As discussed above, it is abundantly clear that the classifications in both Ordinance 8344 and Ordinance 8585 were rationally related to legitimate state objectives.

Jackson Court apparently bases its equal protection claim on the City's inconsistency in prohibiting transient uses in residential areas. Jackson Court makes much of the fact that other transient uses such as boarding houses are not prohibited by Ordinance 8344 and that a boarding house is actually located in the area near Jackson Court's project. Thus, Jackson Court argues that treating boarding houses more favorably than timeshare condominiums amounts to an equal protection violation. In other words, Jackson Court does not complain that the prohibition on timesharing does not serve the City's objective of limiting transient uses in residential areas; it complains only that the City has not prohibited *all* transient uses in residential areas. This, however, does not amount to a violation of the equal protection clause.

As long as the classification is rationally related to a legitimate state objective, the City is free to attack the perceived evil, transient uses, in a piecemeal fashion. Equal protection does not require that "all evils of the same genus be eradicated or none at all." *Railway Express Agency v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949). In rejecting a constitutional attack on an allegedly underinclusive statute the Supreme Court explained:

> [W]e are guided by the familiar principles that a 'statute is not invalid under the Constitution because it might have gone farther than it did,' that a legislature need not 'strike at all evils at the same time,' and that 'reform may take one step at a time, addressing itself to

the phase of the problem which seems most acute to the legislative mind.'
*Katzenbach v. Morgan,* 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966) (citations omitted). Therefore, the fact that the City has not prohibited all transient uses in residential areas is constitutionally irrelevant. Accordingly, since the prohibition on timesharing is rationally related to the legitimate objective of preserving residential integrity by limiting transient uses, Ordinance 8344 and Ordinance 8585 are constitutionally permissible regulations within the City's police powers.

Jackson Court's final argument is that the City Council applied the provisions of the timeshare moratorium Ordinances in a discriminatory manner inasmuch as all previous waiver requests had been granted and Jackson Court's request was the first and possibly only request the Council denied. This claim might have some force if Jackson Court alleged that the discriminatory application was based on race, religion or national origin. *See e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed 220 (1886). But in the absence of such allegations, this court's review of the challenged action is limited to whether the Council's denial of Jackson Court's request was rationally related to a legitimate state objective. As discussed above in the context of substantive due process, the Council's action was rationally related to the legitimate objective of preserving residential integrity. Finding no discrimination based on race, religion, or national origin, this court need look no further. Therefore, the court finds, as a matter of law, that the enactment of the subject Ordinances and the denial of Jackson Court's waiver request did not violate the equal protection clause of the Fourteenth Amendment.

### III.

In review, on the basis of the uncontested material facts and as a matter of law the court holds as follows:

1. Jackson Court's claims are not moot or prescribed (sections A and B, supra).

2. Jackson Court's assertion that Ordinance 8344 violates Louisiana law and the New Orleans City Charter does not implicate a federal constitutional right (section C(1), *supra*).

3. Jackson Court's Complaint fails to state a Fifth Amendment taking claim, or if it states such a claim, that claim is premature (section C(2), *supra*).

4. Jackson Court's Complaint fails to state a vagueness claim under the Constitution (section C(3), *supra*).

5. Jackson Court's Complaint and Amended Complaint fail to state a procedural due process claim since:

 a) Jackson Court had no constitutionally protected property interest at stake in either the enactment of Ordinance 8344 or the denial of its waiver request (section C(4)(a), *supra*); and

 b) Even if Jackson Court had a protected property interest, both the enactment of Ordinance 8344 and the denial of the waiver request were legislative decisions with respect to which Jackson Court had no procedural due process rights (section C(4)(b), *supra*); and

 c) Even if Jackson Court was deprived of constitutionally protected property interests in circumstances that required constitutional procedural due process, Jackson Court received all the process it was due (section C(4)(c), *supra*).

6. Jackson Court's Complaint and Amended Complaint fail to state a substantive due process claim with respect to Ordinance 8344, Ordinance 8558 and the denial of its waiver request (section C(5), *supra*).

7. Jackson Court's Complaint and Amended Complaint fail to state an equal protection claim (section C(6), *supra*).

8. Since Jackson Court's Complaint and Amended Complaint present no claim of constitutional dimension, Jackson

Court has failed to state a claim under 42 U.S.C. § 1983.

Accordingly;

IT IS ORDERED that the Motion of Defendant, City of New Orleans, for Summary Judgment and/or to Dismiss be and is hereby GRANTED.