Thomas E. SCHAFER, JR., Charles A. Byrne, III, et al., Plaintiffs-Appellants,

v.

The CITY OF NEW ORLEANS, Defendant-Appellee,

and

New Orleans City Council, Intervenor-Appellee.

No. 84–3279.

United States Court of Appeals, Fifth Circuit.

Oct. 11, 1984.

Schafer & Schafer, Timothy G. Schafer, New Orleans, La., for plaintiffs-appellants.

Salvador Anzelmo, City Atty., Karen Milner, Asst. City Atty., New Orleans, La., for City of New Orleans.

Jones, Nabonne & Wilkerson, Okla Jones, II, New Orleans, La., for New Orleans City Council.

Ward & Clesi, Joseph R. Ward, Jr., New Orleans, La., for intervenor-appellee.

Before RUBIN, REAVLEY and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Property owners seek an injunction against enforcement of a City of New Orleans ordinance prohibiting the issuance of building permits for fast-food restaurants in a certain neighborhood until the City completes a study of the area. The district court held that this moratorium was not a zoning ordinance and therefore need not conform to Louisiana's constitutional and statutory provisions for the adoption of such ordinances and that its enactment was not a denial of due process or equal protection. Relying on the temporary nature of the restriction, we affirm.

Thomas E. Schafer, Jr., and others who join as plaintiffs in this suit, ("the landowners"), own the property that forms a corner of South Carrollton Avenue and Jeannette Street in the City of New Orleans. In 1970, the City adopted a comprehensive zoning ordinance permitting the landowners' property and other property in the same square to be used for a variety of

commercial purposes, including operation of fast-food restaurants. In this square, fronting on South Carrollton Avenue, there are a Gulf Service Station, a Popeye's Chicken store (which is of the fast-food type), a branch of the United States Post Office, and, on the landowners' property, a sandwich shop and a drug store, which has a food-service counter. Behind this property is an industrial district and in that adjacent square the regional transit authority bus and car "barn" is located.

In January 1984, McDonald's Corporation, which franchises fast-food restaurants, agreed to buy the Post Office property and the landowners' property for use as a McDonald's Drive-In. When Bryan Wagner, the City Councilman elected from the district in which these properties are located, read an article in the New Orleans Times-Picayune about McDonald's plans, he had drafted and then introduced a proposed ordinance, which later became Ordinance No. 9713 M.C.S., calling for a moratorium on the issuance of permits for fast-food restaurants in that area until a study of land use in the area could be completed or until December 31, 1984, whichever was sooner. He also introduced a resolution requesting the City Planning Commission to initiate a study of land use in the area. The Council immediately adopted the resolution which recited that the Carrollton

neighborhood, in which the landowners' property is located, is one of the most picturesque and stable in the city and is historically important. A public hearing was later held on the proposed moratorium ordinance and, although no notice of the hearing was given to the landowners, Timothy Schafer, their counsel, appeared at the hearing and spoke in opposition to the proposed moratorium. Nineteen persons, three of whom represented neighborhood or historic groups, advocated the proposal, giving a number of reasons why they opposed the construction of a fast-food restaurant on this block.

After the moratorium was adopted, McDonald's terminated the agreement to buy the landowners' property, as it had a right to do under a clause permitting termination of the agreement if it could not obtain á building permit.

The district court denied the landowners' application for a preliminary and permanent injunction and dismissed the suit. The landowners contend that the ordinance was adopted in violation of Louisiana law and deprives them of their property without due process or equal protection.

## I.

The Louisiana enabling statutes [1] and the City Charter [2] require notice of a proposed

---

1. La.R.S. 33:4724 provides in part:

   The Legislative body of a municipality which has provided for a comprehensive zoning plan shall provide for the manner in which the regulations and restrictions and the boundaries of the districts shall be determined, established, and enforced and from time to time amended. No regulations or restrictions shall become effective until after a public hearing at which parties in interest have an opportunity to be heard. A public hearing in relation to the regulations may be held by the legislative body of a municipality which has provided for a comprehensive zoning plan. In such case notice of the time and place of the hearing shall be published once a week in three different weeks in the official journal of the municipality or, if there be none, in a paper of general circulation therein; at least fifteen days shall elapse between the first publication and the date of the hearing.

La.R.S. 33:4725 provides in part:

   The regulations, restrictions and boundaries may, from time to time, be amended, supplemented, changed, modified or repealed .... The provisions of R.S. 33:4724 relative to public hearing and official notice shall apply equally to all changes or amendments.

2. City Charter Section 3–112(5) provides in part that ordinances on the subject of zoning or rezoning

   "can be adopted only at a regular meeting of the Council and shall not be adopted until at least twenty-one days after copies thereof shall have been distributed to all members of the Council and made available to the public, nor until a notice of the introduction of such proposed ordinance shall have been published in the official journal of the City not less than one week nor more than two weeks after the introduction thereof, which notice shall state the substance of the proposed ordinance and the date of the meeting at which the Council shall begin its consideration thereof."

change in a zoning ordinance and prohibit adoption of such a change without a minimum layover period. The construction of these statutes is obviously for the state courts. In *A. Copeland Enterprises v. City of New Orleans*,[3] a Louisiana appellate court considered a similar attack on a moratorium on land use. It found that the landowners had not borne the burden of demonstrating that the moratorium was "incompatible with the enabling legislation or the [Louisiana] Constitution," and that the moratorium was not subject to a similar layover provision in the New Orleans Comprehensive Zoning Ordinance.[4] "No notice," it said, is "required before the passage of 'urgency' ordinances of limited duration in furtherance of a comprehensive plan since the very purpose of such ordinances—to preserve the status quo—would be destroyed if such notice and hearing were required."[5]

Although *Copeland* did not specifically address the notice requirements in City Charter Section 3–112(5), the decision cannot be distinguished on that basis. *Copeland* construed La.R.S. 33:4721 *et seq.* and the provisions of New Orleans ordinances similar to City Charter Article 3–112(5). In the light of *Copeland*, we have no reason to believe a state court would interpret City Charter Article 3–112(5) differently. We must accept the state court's construction of state law.[6]

## II.

The landowners' contention that they have been denied property without due process depends first on their showing a deprivation of property. The district court noted that they had introduced no evidence that the value of their property had been reduced. Their present use is not affected. There is no evidence that delaying the possible sale of the property until after December 31, 1984 will cause them any financial loss. Indeed, the ordinance does not deprive the landowners of the opportunity to sell the property to McDonald's in the future, although the contract gave McDonald's the right to withdraw from the earlier contract.

■ The landowners have certainly received procedural due process. They had actual notice of the introduction of the ordinance, appeared at the hearing preceding its adoption, and availed themselves of the opportunity to argue against its adoption. This sufficed.[7]

■ The landowners appear to contend that the ordinance is so arbitrary an exercise of government power as to deny them due process in its substantive sense. Every regulation of the use of property, permanent or temporary, restricts the owner's freedom and may affect the value of his property. The due process clause, in its substantive sense, requires only that the regulation be reasonably related to a valid governmental purpose.[8]

■ Zoning ordinances and similar regulations on the use of property are presumed valid.[9] Unless their impact on land usage denies the owner the " 'justice and

3. 372 So.2d 764 (La.App. 4th Cir.1979).

4. *Id.*, 372 So.2d at 766.

5. *Id.* at 765.

6. *Gooding v. Wilson*, 405 U.S. 518, 525 and n. 3, 92 S.Ct. 1103, 1107 and n. 3, 31 L.Ed.2d 408, 415 and n. 3 (1972); *Blair v. Commissioner of Internal Revenue*, 300 U.S. 5, 9–10, 57 S.Ct. 330, 332, 81 L.Ed. 465 (1937); *United States v. Farish*, 360 F.2d 595 (5th Cir.1966).

7. *Cafeteria and Rest. Wkrs. U., Local 473 v. McElroy*, 367 U.S. 886, 894–95, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *Mathews v. Eldridge*, 424 U.S. 319, 340–49, 96 S.Ct. 893, 905–910, 47 L.Ed.2d 18 (1976).

8. *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

9. *Goldblatt v. Town of Hempstead, New York*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

fairness' " guaranteed by the constitution, they should be upheld.[10]

■ The ordinance does not take an inch of the landowners' property. It does not deny them the right in the future to use the property for any purpose that it may now be put to. It merely suspends the owners' ability to devote their property to a particular use for 10½ months. We express no opinion on the reasonableness of zoning the property more restrictively than is presently permitted. The City has taken no such action.

Interim development controls such as this moratorium have been found to play an important role in municipal planning.[11] They aid in "bridging the gap between planning and its implementation into legal measures." [12] They may, as here, be used to preserve the status quo while study of the area and its needs is completed.[13] This moratorium on land use serves a significant public purpose.

Study of, and, if study warrants, changes in land use control cannot be completed instanter. While these are proceeding, there may be a dramatic increase in the number of potentially adverse uses. Building activity may increase or be expected because of the fear that contemplated uses may be prohibited. Interim zoning or a moratorium may be necessary to prevent a plan's defeat before it is formulated.[14] In determining whether stop-gap ordinances or moratoria are reasonable, their duration is an important consideration. Property owners should not be deprived of the use of their property by an ordinance if its temporary character is but a ruse. Yet municipalities must be allowed a reasonable time within which to plan comprehensive zoning measures.[15]

This New Orleans moratorium is for less than a year and its expiration date is firmly fixed.[16] While the landowners do not specifically challenge the duration of the moratorium, they challenge its application to only five blocks along Carrollton Avenue and seven blocks along Oak Street. There is at least a plausible reason to thus limit the area. Immediately adjacent blocks along Carrollton are zoned residential; the Comprehensive Zoning Law currently prohibits fast-food restaurants in residential zones, and thus there is no need for a moratorium as to those adjacent blocks. The landowners have not established that the 10½ month moratorium denies them substantive due process.

■ The landowners' argument that the ordinance denies them equal protection also fails. Patently, the ordinance is aimed only at fast-food restaurants. But we cannot say, *a priori*, without evidence, that there is not a sufficient rational distinction between such restaurants and other commercial establishments to warrant a study. We note again that we are not required to determine the validity of a *permanent* zoning ordinance that, for example, distinguishes between the "Popeye's" or other establishments already located in that block and other kinds of fast-food restaurants. The issue presented is whether a moratorium and study of such uses, over a 10½ month period, denies those who would build fast-food restaurants of equal protection: The burden of proof is on the land-

---

10. *Agins v. Tiburon*, 447 U.S. 255, 263, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106, 113 (1980).

11. Freilich, *Interim Development Controls: Essential Tools for Implementing Flexible Planning and Zoning*, 49 J. Urban L. 65, 66–67 (1971).

12. 3 Rohan, Zoning and Land Use Controls, § 22.01 at 22–2.

13. Comment, *Stop-Gap and Interim Legislation, a Device to Maintain the Status Quo of an Area Pending The Adoption of a Comprehensive Zoning Ordinance or Amendment Thereto*, 18 Syracuse L.Rev. 837, 849–850 (1967).

14. *Miller v. Board of Public Works*, 195 Cal. 477, 234 P. 381 (1925); *Campana v. Township of Clark*, 82 N.J.Super. 392, 197 A.2d 711 (1964).

15. *Lake Illyria Corp. v. Town of Gardiner*, 43 A.D.2d 386, 352 N.Y.S.2d 54 (App.Div.3d Dept. 1974); *Hasco Electric Corp. v. Dassler*, 143 N.Y. S.2d 240 (Sup.Ct.1955); *Almquist v. Town of Marshan*, 308 Minn. 52, 245 N.W.2d 819 (1976).

16. *See, e.g., Deal Gardens, Inc. v. Board of Trustees of Loch Arbour*, 48 N.J. 492, 226 A.2d 607 (1967).

owners. The district court found they had not met it. It also found that the "waiver/appeals" section of the ordinance was not unconstitutionally vague. We find no error in these rulings on the record before us.

For these reasons the judgment is AFFIRMED.