In the Matter of **LEWISVILLE PROPERTIES, INC.,** Debtor.

**John M. GRAY, Plaintiff–Appellant,**

v.

**Rex C. CAUBLE, Defendant–Appellee.**

No. 87–1514.

United States Court of Appeals, Fifth Circuit.

July 18, 1988.

Philip I. Palmer, Jr., Charles Ory, Palmer & Palmer, Dallas, Tex., for plaintiff-appellant.

Samuel J. Buffone, Asbill, Junkin, Myers & Buffone, Washington, D.C., for defendant-appellee.

Before WISDOM, RUBIN, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Gray appeals the district court's summary judgment dismissing his claim against Cauble brought pursuant to § 1964(c) of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (West 1984 & 1987 Supp.) ("RICO"). We find no error in the district court's ruling denying the use of collateral estoppel to establish a § 1962(c) violation from Cauble's prior criminal RICO conviction, and we further hold that Gray failed to produce sufficient independent evidence of the predicate acts of mail and wire fraud he alleged to withstand adverse summary judgment.[1] Accordingly, we AFFIRM the district court's dismissal of the claim.

---

1. Gray's complaint also contained securities fraud allegations, but those claims were later abandoned.

Certain of the material facts are uncontested. In 1973, Rex Cauble and Appellant Gray, a consultant to and later Chief Executive Officer of Dallas International Bank ("DIB"), agreed jointly to purchase a block of unsubscribed shares of DIB stock, with the purported intention of holding the stock until the bank's "development program" increased its assets and then selling it at a substantial profit. To finance the venture, several loans were obtained at the National American Bank ("NAB") in New Orleans. The loans, which were collateralized by DIB stock, were made in Gray's name and personally guaranteed by Cauble.[2] Eventually Gray fell behind on his loan payments, prompting the bank to liquidate some of the stock posted as collateral and in July 1978, to foreclose on the loan. Cauble honored his loan guarantee by purchasing the stock pledged as collateral and paying the remaining deficiency.

During 1977 and 1978, Gray had actively sought the sale of DIB and held unsuccessful negotiations with several prospective buyers. To enhance the bank's saleability, Gray increased the bank's deposits by attracting short-term, "hot" money deposits[3] and engaged in other questionable and risky banking practices. By the fall of 1978, the DIB, under Gray's stewardship, came under the scrutiny of the Texas State Banking Commission and the Federal Deposit Insurance Corporation. At the suggestion of those organizations, an independent board was set up to manage the bank temporarily.

These events, to which Gray and Cauble assign markedly different interpretations,[4] gave rise to the present litigation instituted by Gray in 1980. Gray's original complaint was filed as a cross-action against Defendants Cauble and Cauble Enterprises, Ltd., in two consolidated adversary proceedings brought in the bankruptcy case of Lewisville Properties, Inc., a company owned by Gray. The initial complaint contained only state law fraud claims, but, following the criminal RICO conviction of Rex Cauble[5] in

2. Both the terms of the loans and the circumstances under which they were obtained were unconventional. The loan guarantee from Cauble was not reduced to writing, allegedly because the bank thought it "unnecessary," Cauble having proven his business integrity in prior dealings with the bank. Furthermore, although the initial loan was made in Gray's name, the loan agreement stipulated that he would own only 32,000 shares of the stock purchased with the loan proceeds and would be responsible for $400,000 of the loan, and that all other stock purchased would be owned by Cauble who would repay the remaining portion of the loan.

3. "Hot" money refers to financing long-term commitments with short-term deposits which can be withdrawn on short notice.

4. Cauble characterizes his interactions with Gray as legitimate business dealings and cites Gray's mismanagement of DIB as the cause for Gray's financial demise. Gray, on the other hand, asserts that the "business venture" was a ploy to involve him unwittingly in a drug importation scheme, and that his subsequent unwillingness to cooperate in the scheme spelled his financial doom. According to Gray, Cauble's true purpose in acquiring and maintaining control over DIB was to obtain a vehicle to launder drug sale cash receipts. This allegedly was evidenced by Cauble's unwillingness to sell the bank when it became profitable to do so, and by a series of events set into motion by Cauble culminating in Gray's ouster from a control position at DIB after Gray refused to accept

a large deposit (which Cauble represented was from a "gambling win") without complying with federal reporting requirements. The scheme, the success of which Gray claims was dependent upon income derived from a pattern of racketeering (drug sales), allegedly required removing Gray from his position at DIB, terminating his stock ownership, and misrepresenting the bank's financial position to a potential buyer. In order to accomplish these goals, Cauble allegedly told the New Orleans bank to foreclose on the loan made to finance the Cauble–Gray venture and then bought the stock used as collateral at the foreclosure sale (allegedly with drug money). Cauble thus obtained more DIB stock, and along with it the ability to remove Gray from the bank's board of directors.

5. In 1982, Cauble was convicted for criminal RICO violations. The indictment under which he was charged alleges Cauble Enterprises as the RICO enterprise and names marijuana smuggling activities as the pattern of racketeering activity. In this civil RICO action brought by Gray, the alleged enterprise is DIB and the Gray–Cauble joint venture, and the alleged racketeering activity consists of derivation of income from a racketeering activity and use of that income in acquiring an interest in operating the enterprise. The alleged racketeering acts are as follows: 1) the quashing of the proposed sale of DIB; 2) orchestrating foreclosure of the loan and the New Orleans Bank; 3) orchestrating foreclosure on a loan from

1982, it was amended to include a civil RICO claim, which is the subject of this appeal.

Gray maintained throughout this litigation that his case is limited to proving causation and damages because Cauble's RICO conviction establishes by collateral estoppel all other elements of the § 1964(c) civil action. The district court, however, refused to invoke collateral estoppel in this case because it found that Gray had failed to establish an identity between the facts and issues involved in the civil and criminal actions as required by *United States v. Monkey*, 725 F.2d 1007 (5th Cir.1984). In separate action,[6] the court granted Cauble's motion for summary judgment *on the merits*, after finding that all the acts which Cauble committed in furtherance of the alleged conspiracy either did not occur or that Cauble was privileged to commit them.

## DISCUSSION

■ The sole issue raised by Gray on appeal is whether the district court erred as a matter of law in refusing to invoke collateral estoppel to establish the alleged civil RICO violations.[7] Collateral estoppel is an equitable doctrine which precludes relitigation of issues that were a necessary part of, and were actually decided in a prior judgment. *Sidag Aktiengesellschaft v. Smoked Foods Products*, 776 F.2d 1270, 1275 (5th Cir.1985). Collateral estoppel is available to plaintiffs in civil racketeering litigation. *See, e.g., Anderson v. Janovich*, 543 F.Supp. 1124 (W.D.Wash.1982); *State Farm Fire & Casualty Co. v. Estate of Caton*, 540 F.Supp. 673 (N.D.Ind.1982). The doctrine depends on three elements: 1) the issue at stake must be identical to the one involved in the prior litigation; 2) the

issue must have been actually litigated in the prior litigation; and 3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *United States v. Monkey*, 725 F.2d 1007, 1010 (5th Cir.1984). Trial courts have been accorded wide latitude in ascertaining when collateral estoppel may be applied offensively. *See Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 207 (5th Cir.1985); *Nations v. Sun Oil Company*, 705 F.2d 742, 744–45 (5th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983).

■ The district court rejected Gray's appeal for offensive collateral estoppel, reasoning that his complaint alleged a different enterprise and different racketeering acts from those proven in the criminal proceeding, and the civil litigation would thus require the adjudication of issues not addressed in the criminal proceeding. This analysis is sound. Instead of seeking to estop Cauble from relitigating specific facts or legal issues decided in the criminal case, Gray has asserted a much broader theory. Baldly stated, he contends that Cauble's conviction for importing and selling illegal drugs establishes all the factual and legal issues (except causation and damages) of the civil RICO claim which alleges that Cauble defrauded Gray (a) by orchestrating Gray's ouster from his positions at DIB, and (b) by misrepresenting Cauble's intentions with regard to his future plans for the jointly held DIB stock.

While we have no doubt that the civil and criminal proceedings could raise some common issues, Gray's sweeping collateral estoppel theory is untenable in light of the

---

South Main Bank of Houston; 4) orchestrating Gray's removal as director and chairman of the board of DIB; 5) orchestrating Gray's ouster as Chief Executive Officer of DIB; and 6) taking an interlocutory judgment against Gray on some loans that Cauble had made to Gray after having destroyed Gray financially.

6. The collateral estoppel issue was resolved in an interlocutory order denying Gray's motion to quash Plaintiff's request for production of Cauble's criminal trial exhibits.

7. In order to establish a § 1964(c) violation, it is necessary to allege that the defendant (1) being employed by or associated with (2) an enterprise engaged in or affecting interstate commerce, (3) conducted or participated in the conduct of the affairs of the enterprise, (4) through a pattern (5) of racketeering activity. *Villafane v. Segarra*, 797 F.2d 1 (1st Cir.1986).

differences between the civil and criminal pleadings. As the district court observed, the criminal indictment identified "Cauble Enterprises" as the enterprise forming the basis of RICO liability. *United States v. Cauble*, 706 F.2d 1322, 1331 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). The enterprises alleged in the civil claim are "the joint venture of Rex Cauble and John Gray" and the "Dallas International Bank." This most elemental predicate of a RICO violation was not resolved or formally addressed in Cauble's criminal case. Similarly, the pattern of racketeering activity set forth in the civil action is distinct from that which served as the basis for the criminal convictions.[8] The district court did not err in refusing to allow Gray to employ offensive collateral estoppel.

We turn to the issue whether, absent reliance on collateral estoppel, Gray has presented evidence sufficient to raise "genuine, triable issues of material fact." [9] The summary judgment standard set forth in Federal Rule of Civil Procedure 56(c) [10] was recently explained by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case; naked assertions of an actual dispute will not suffice. *See Liberty Lobby*, 477 U.S. at 255–56, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 322, 323, 106 S.Ct. at 2553–54.

Our review of the record reveals that no genuine issues of material fact have been raised as to several critical elements of Appellant's RICO claims. Gray's complaint asserts that, in carrying out the objective of removing Gray from a control position at DIB and obtaining control over the enterprise, Cauble conspired with Cauble Enterprises and committed the following predicate acts:

a) The use of the mails to carry out a scheme to defraud within the meaning of 18 U.S.C. § 1341, and specifically causing the mailing of the Notice of Foreclosure on or about July 1, 1978, by the American National Bank of New Orleans to John M. Gray demanding payment in full by July 6, 1978 or foreclosure would take place on July 7, 1978.

b) Fraud by wire within the meaning of 18 U.S.C. § 1343 and specifically

i) Telephoning John M. Gray on July 6, 1978, to tell Gray that he, Cauble, was unable to halt the foreclosure.

---

8. The civil complaint asserts a pattern of racketeering activity comprised of violations of the mail fraud statute, 18 U.S.C. § 1341, paragraph 34(a), the wire fraud statute, 18 U.S.C. § 1343, paragraph 34(b), and fraud in the sale of securities, 18 U.S.C. § 1343, paragraph 34(c). Second Amended Cross–Complaint, Paragraph 34. The criminal indictment, in contrast, set forth a pattern of racketeering activity based on aiding and abetting the importation of marijuana in violation of 21 U.S.C. § 952, multiple Travel Act violations involving the importation and distribution of marijuana in violation of 18 U.S.C. § 1952, and obstruction of justice in violation of 18 U.S.C. § 1510. Appellant urges that the actions are related in that the violations alleged in the civil action were committed in furtherance of the marijuana importation scheme which served as the basis of Cauble's criminal conviction. However, even assuming that such a relation exists, not every issue arising from the mail, wire, and securities fraud claims was litigated in the criminal proceeding. Under these circumstances, the application of collateral estoppel to all the liability elements is inappropriate.

9. Appellant does not assert in the alternative that he has made such a showing. Nonetheless, because the district court granted summary judgment on the merits, we must address the adequacy of evidence offered in support of the complaint. We affirm this summary judgment, as we may, on a basis different from that of the district court. *Jaffke v. Dunham*, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); *Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1281 (5th Cir.1981).

10. Rule 56(c) provides:

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ...

FED.R.CIV.P. 56(c).

ii) Telephoning John M. Connally in May of 1978 to persuade Connally to have his client cease any plans to buy the "DIB".

iii) Telephoning the directors and major shareholders of "DIB" in September and October of 1978, to persuade them that the "DIB" was in serious trouble and that Gray was the sole problem.

 Mail and wire fraud violations result from a scheme devised for the purpose of defrauding by means of false pretenses, which includes representations or promises and use of the mails or interstate wire communications in furtherance of that scheme.[11] Gray produced no evidence establishing the existence of such a scheme other than his own unsubstantiated and conclusory allegations concerning the events surrounding the foreclosure, of which he admittedly had no personal knowledge.[12] Furthermore, Gray's claims are effectively rebutted by the affidavits and deposition testimony of several individuals intimately familiar with the foreclosure transaction and circumstances of Gray's ouster. The defense presented deposition testimony of NAB bank officers and the attorney hired to handle the foreclosure, in which they all cited the longstanding delinquency on Gray's note as the sole reason for foreclosure and uniformly denied that Cauble had any role in the bank's foreclosure decision. With regard to the wire fraud claims, the defense introduced an affidavit of John Connally who forcefully denied having had any phone conversation with Rex Cauble of the nature asserted in the subsection (b) wire fraud allegation. And, in response to the wire fraud allegation in subsection (c), the defense offered declarations of two DIB shareholders who stated that their decision to request Gray's resignation was in no way influenced by Rex Cauble. Because unsupported assertions are insufficient,

when challenged by proper summary judgment evidence of a defendant, to create a factual issue under *Celotex*, we agree that summary judgment was prudently granted.

The opinion of the district court is AFFIRMED.

---

11. *United States v. Curry,* 681 F.2d 406 (5th Cir.1982); *United States v. Gordon,* 780 F.2d 1165 (5th Cir.1986).

12. We do not suggest that Gray's allegations are implausible, nor do we intimate any decision

concerning the possibility that allegations like those made by Gray might be sufficient to establish a civil RICO violation. Here, however, Gray's allegations were unsubstantiated by admissible evidence.