**A.E. BREWSTER d/b/a Brewster Realty and Investment Co., et al., Plaintiffs,**

v.

**The CITY OF DALLAS, et al., Defendants.**

**Civ. A. No. CA 3–83–0964–G.**

United States District Court, N.D. Texas, Dallas Division.

Dec. 16, 1988.

Charles R. McConachie, Harold B. Gold, Stutzman & Bromberg, Dallas, Tex., for plaintiffs.

Sam A. Lindsay, Katherine Knight, Asst. City Atty., Dallas, Tex., for defendants.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion of defendant City of Dallas ("the City") for summary judgment against plaintiffs A.E. Brewster, et al. (collectively "Brewster"). Upon review of all submissions, the court is of the opinion that the motion should be granted.

## I. NATURE OF THE CASE

On June 7, 1983, Brewster filed this action challenging the City Sign Ordinance of the City of Dallas, Texas ("the Ordinance").[1] The Ordinance's purpose is to promote the safety of persons and property, improve communications efficiency, protect the public welfare, and enhance the City's appearance. § 51–7.101.

The Ordinance regulates the location of signs within business and non-business districts and within individual parcels of property. It also restricts the size, luminance, and movement of signs; their projection from building walls; the size and number of words they may contain; and the number of signs at a given location. Any sign not conforming to the Ordinance is designated a nonconforming sign. Signs legally erected or maintained prior to passage of the Ordinance are required to be removed or modified to conform by May 14, 1983. Owners of nonconforming signs are entitled to exemption from these restrictions if their signs are designated as landmark signs under the criteria in § 51–7.605. The Ordinance provides for a 10 year amortization period in which owners may terminate nonconforming signs and recoup their investment; it also provides a depreciation

---

**1.** Revised Code of the City of Dallas § 51–7.100, *et seq.*

allowance for such signs. Sign owners may seek an extension or variance if necessary. §§ 51–7.702 to 51–7.704.[2]

Brewster seeks injunctive and declaratory relief concerning enforcement of the Ordinance as it pertains to on-premise signs. He contends that the Ordinance is unconstitutional under the First and Fourteenth Amendments. In particular, he contends that the Ordinance violates his freedom of speech and deprives him of property without due process of law.

## II. THE APPLICABLE STANDARD

### A. Summary Judgment

■ Summary judgment is mandatory when a party fails to establish the existence of an essential element of his case on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir.1988). The failure of the non-movant's proof as to any one essential element renders all other facts immaterial. *Celotex Corporation*, above, 106 S.Ct. at 2553. The non-movant's evidence is to be believed and all justifiable inferences will be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Nevertheless, unless there is sufficient evidence for the jury to return a verdict in the non-movant's favor, there is no genuine issue for trial. Evidence that is "merely colorable" or "not significantly probative" is insufficient. *Anderson*, above, 106 S.Ct. at 2511. Likewise, a mere scintilla of evidence will not suffice. *Id.* at 2511–12. Moreover, the non-movant may not rely on naked assertions of dispute, but must adduce admissible evidence creating a fact

issue as to each essential element of the claim. *Matter of Lewisville Properties, Inc.*, 849 F.2d 946, 950 (5th Cir.1988). The movant may discharge its burden to demonstrate the absence of a genuine issue of material fact by pointing out the absence of evidence supporting the non-movant's case. *Celotex Corporation*, above, 106 S.Ct. at 2552–54; *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1195–96 (5th Cir. 1986).

■ Finally, a dispute over the legal inferences to be drawn from the facts will not preclude summary judgment. *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721, 728 n. 13 (5th Cir.1976); *International Association of Machinists and Aerospace Workers, District 776 v. Texas Steel Company*, 538 F.2d 1116, 1119 (5th Cir.1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977).

### B. Burdens of Proof and Presumptions

■ The same substantive evidentiary burden of proof that applies at trial will apply to a summary judgment decision. *Phillips Oil Company*, above, 812 F.2d at 273 (quoting *Anderson*, 106 S.Ct. at 2512).

■ Zoning ordinances are presumed valid. *Schafer v. City of New Orleans*, 743 F.2d 1086, 1089 (5th Cir.1984); *Price v. City of Junction, Texas*, 711 F.2d 582, 588 (5th Cir.1983). The courts may interfere only if an ordinance is unreasonable and arbitrary. Hence, parties challenging an ordinance bear the "extraordinary burden" of demonstrating that reasonable minds could not differ as to whether the ordinance has a "substantial relationship to the protection of the general health, safety or welfare of the public." Otherwise, the ordinance will stand. *Price*, above, 711 F.2d at 588.

■ Thus, the Ordinance need only have a *possible* rational basis; the court will not inquire into its actual purposes. In other words, the court's review is defer-

---

**2.** During the pendency of this case, the Texas Legislature enacted a compensation scheme for owners of nonconforming signs. That scheme allows the City to compensate sign owners through an abatement, for a maximum of five years, of municipal property taxes. Texas Local Government Code § 216.010(b) (Vernon 1988). That statute will not affect the outcome here, however, because the events in this case occurred before enactment of the statute.

ential to the City. *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1273 (5th Cir. 1988), *pet. for cert. filed,* 57 U.S.L.W. 3001 (July 5, 1988).

■ However, the courts will subject an ordinance regulating protected speech to a more intense level of scrutiny. Ordinances regulating highly protected speech are scrutinized more intensely than those which, like this one, regulate speech given less protection. *Id.* at 1274. However, only rational basis scrutiny is accorded the due process question. *See SDJ, Inc.,* above, 837 F.2d at 1273; *Schafer,* above, 743 F.2d at 1089.

## III.  FIRST AMENDMENT ANALYSIS

■ The First Amendment extends to commercial speech that neither misleads nor concerns an unlawful activity. Nevertheless, the protection is limited, allowing the ban and regulation of such speech in certain situations. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 506, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981) (plurality opinion).

A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Id.* at 507, 101 S.Ct. at 2892.

Brewster does not dispute that the Ordinance seeks to implement three substantial government interests: promoting traffic safety, communications efficiency, and landscape quality and preservation. Plaintiffs' Response to Defendants' Motion for Summary Judgment at 9.[3]

Consequently, the critical inquiries are whether the Ordinance directly advances these interests and whether it reaches any further than necessary to do so.

### A.  Direct Advancement of Interest

■ As long as the City has a reasonable basis for believing that the restriction of commercial speech directly advances the government interest at issue, the court will not disturb that decision. *Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico,* 478 U.S. 328, 340, 106 S.Ct. 2968, 2977, 92 L.Ed.2d 266 (1986); *Metromedia,* 453 U.S. at 509, 101 S.Ct. at 2893. *See also Lindsay v. City of San Antonio,* 821 F.2d 1103, 1109–10 (5th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988) (judge's finding that portable sign ordinance barely improved city's appearance was wrongful substitution of his judgment for that of city officials).

#### 1.  Communications Efficiency

■ Brewster argues that the Ordinance does not improve communications efficiency. In support of this argument, Brewster offers the affidavit of Kirk L. Brimley, which states that (1) the sign readership chart represents the judgment of the *sign industry* as to communications efficiency and (2) he "believe[s]" that persons traveling at the speed limit would be unable to comprehend the messages on signs conforming to the Ordinance. Plaintiffs' Response to Defendants' Motion for Summary Judgment, Exhibit E. Under *Anderson,* this affidavit is not sufficiently probative evidence to defeat the City's summary judgment motion. The affidavit does not indicate that the City's judgment was unreasonable, but only that the sign industry has rendered *its* judgment as to the relationship of speed, character sign size, reading distance, and how long the sign remains readable. Brimley's belief, aside from being pure conjecture, likewise does not demonstrate unreasonableness on the part of the City. Similarly, Brewster's Exhibit D, consisting of affidavits of sign owners who believe that the ordinance hin-

---

3.  Even if Brewster had raised such a dispute, it has long been recognized that the government has a legitimate interest in controlling non-communicative aspects of the sign medium. *Metromedia,* 453 U.S. at 502, 101 S.Ct. at 2889. The interests stated are clearly substantial, and the City may advance them by using its police powers. *Id.* at 507–08, 101 S.Ct. at 2892–93; *Lindsay v. City of San Antonio,* 821 F.2d 1103, 1108–09 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988).

ders the effectiveness of their communications with the public, fails to demonstrate that the City's judgment was unreasonable. The affiants may not substitute their judgment for that of the City.

In particular, the affidavits fail to negate the City's judgment that the restrictions promote efficiency by ensuring that "[p]ersons exposed to signs are not so overwhelmed by the number of messages presented that they cannot find the information they seek, and are able to observe or ignore messages, according to the observer's purpose." § 51–7.101(b)(4). The City has thus made clear that the interest served by the Ordinance is not the interests of sign owners but rather the observer's ability to efficiently observe or ignore messages.[4]

### 2. Safety

Likewise, there is no evidence that the Ordinance does not promote safety. The Brimley affidavit is conjectural, and does not in any way actually state that the sign ordinance fails to promote safety. Similarly, the studies and publications attached as exhibits F, G, and I present no more than barely colorable evidence. They do not indicate that there have been any accidents or an overall decrease in safety in Dallas due to the particular restrictions in the Ordinance. There are no comparisons between signs that conform to the Ordinance and signs that do not. The studies focus on off-premise signs, particularly those beside highways.[5]

Finally, Brewster contends that the Ordinance does not directly promote safety because it allows businesses to fly large political flags not subject to the Ordinance's restrictions. The relationship between sign restrictions and safety does not change, however, simply because the Ordinance is underinclusive, i.e., because it permits large political flags. *Posadas de Puerto Rico Associates*, above, 106 S.Ct. at 2977–78; *Metromedia*, above, 453 U.S. at 511–12, 101 S.Ct. at 2894–95; *Lindsay*, above, 821 F.2d at 1109–10.[6]

### 3. Aesthetics

Brewster asserts that the burden is on the City to show some positive aesthetic effect resulting from the Ordinance. However, as plaintiff, Brewster bears the burden of proof. The City discharged its summary judgment burden by pointing out the absence of evidence supporting Brewster's claim that the ordinance does not promote aesthetics. Brewster has not any produced such evidence. In any event, a city's judgment as to aesthetic values should not be replaced by the judgment of a court or a plaintiff. *Lindsay*, above, 821 F.2d at 1109.

### B. Overbreadth

The final *Metromedia* criterion is that the Ordinance reach no further than necessary to accomplish its objectives. 453 U.S. at 507, 101 S.Ct. at 2892. This ordinance merely regulates, without prohibiting, on-site advertising. As long as a content-neutral regulation advances a substantial governmental interest, the regulation is not overbroad. *SDJ, Inc.*, above, 837 F.2d at 1276 (quoting *United States v. Albertini*, 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985)). Consequently, the existence of a less burdensome alternative is immaterial. *Id.* (quoting *Albertini*). Moreover, narrow tailoring is less important when the potential overbreadth concerns speech sub-

---

4. Moreover, the conclusory nature of the form affidavits prevents them from defeating a motion for summary judgment. *Matter of Lewisville Properties, Inc.*, 849 F.2d 946, 950 (5th Cir. 1988).

5. Empirical studies may not substitute for the judgment of the City. The issue of a correlation between the sign restrictions and safety is a legislative, not an adjudicative, question of fact. *See Dunagin v. City of Oxford, Mississippi*, 718 F.2d 738, 748 n. 8 (5th Cir.1983) (en banc) (question of correlation between advertising and liquor consumption may submit to partial empirical solution, but is apt to remain subject to opinion and reasoning. Consequently, the question is legislative, not adjudicative), *cert. denied*, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

6. Furthermore, although the businesses flying political flags may or may not be doing so for commercial purposes, flying the flag falls into the category of protected political speech.

ject to less than full first amendment protection, such as commercial speech. *Id.*

■■■ The Ordinance's regulation of onsite advertising is sufficiently tailored in the Ordinance to accomplish the City's interest. It is content neutral. Absent this regulation, the Ordinance's purposes would be achieved less effectively. *See* III.A, above. Moreover, the Ordinance does not select the messages that the public can see; it merely regulates the non-communicative aspects of signs. Sign owners can still display their messages; the only change is in the way they can display them. This court will not "second-guess" the City's decision that the restrictions in the Ordinance are most appropriate. *SDJ, Inc.*, 837 F.2d at 1276.

## IV. DUE PROCESS

As explained above, the court must presume the Ordinance valid insofar as due process is concerned. Consequently, Brewster bears a heavy burden of demonstrating constitutional invalidity.

■■■ Brewster contends that the Ordinance is an unconstitutional taking because it requires nonconforming signs to be torn down or modified to comply with the Ordinance, while offering amortization and depreciation as compensation. That a regulation restricts the owner's freedom in using his property and may affect the value of the property does not create an unconstitutional "taking." *Schafer*, above, 743 F.2d at 1089. Substantive due process requires only that the Ordinance "be reasonably related to a valid governmental purpose." *Ibid.* Hence, due process is ful-

filled if there is a "possible rational basis" for the Ordinance. *SDJ, Inc.*, above, 837 F.2d at 1273. As explained in part I, the sign ordinance has three rational bases: the promotion of aesthetics, safety, and communications efficiency.[7] In any event, the fact that the Ordinance may reduce a property's value or prevent Brewster from using it in the most profitable manner is not a valid basis for asserting an unconstitutional taking. *Andrus v. Allard*, 444 U.S. 51, 65–66, 100 S.Ct. 318, 326–327, 62 L.Ed.2d 210 (1979); *Rymer v. Douglas County*, 764 F.2d 796, 800–01 (11th Cir. 1985).[8]

The method of terminating non-conforming uses is a decision to be made by the City's legislative body. The body balances the burden to the individual against the public good to be achieved. *Art Neon Co. v. City and County of Denver*, 488 F.2d 118, 121 (10th Cir.1973), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). The takings clause does not require that the non-conforming property be of no value at the termination date. Some loss may still fall on the owners. *Ibid.*[9] The legislative termination plan need only be reasonable. *Ibid.* Amortization is a reasonable method to terminate non-conforming signs. *City of Houston v. Harris County Outdoor Advertising Association*, 732 S.W.2d 42, 49–50 (Tex.App.—Houston [14th Dist.] 1987, no writ). *See also SDJ, Inc.*, above, 837 F.2d at 1278 (ordinance allowing limited amortization period is proper use of police powers); *Murmur Corporation v. Board of Adjustment of City of Dallas*, 718 S.W.2d 790, 794–95 (Tex.App.—Dallas 1986, writ ref'd n.r.e.)

7. Although Brewster argues that the amortization provision bears "no rational relationship" to the life of the sign or its value to a particular business, this is not the rational relationship that is of concern under the due process clause. Rather, the relationship is that between the Ordinance and the valid government purpose.

8. Brewster's claims amount to such an assertion. He argues that the amortization period does not match the life expectancy of the sign or value of the sign to the business. This is, at heart, a claim that he and the other plaintiffs cannot use their property in the most profitable manner. Likewise, the assertion that amortization does not compensate for the "communica-

tion value" of the signs at issue is an assertion that the owners cannot use their property in the most profitable manner.

9. Brewster claims that he and other sign owners will suffer some loss because some signs' life expectancies are longer than the amortization period, because the signs' communications values are possibly diminished, and because not all of the signs can be depreciated annually, that different owners will have different realization rates because they are in varying tax brackets; and that some sign owners may not be in a position to utilize the depreciation allowance.

(amortization reasonable use of police power even if owner will not recoup full value from amortization and depreciation scheme).[10]

In particular, time limits on the amortization period do not constitute an unconstitutional taking. *SDJ, Inc. v. City of Houston*, 636 F.Supp. 1359, 1371 (S.D.Tex.1986), *aff'd*, 837 F.2d 1268 (5th Cir.1988). *SDJ, Inc.* upheld a 6 month amortization period; the one at issue here is much longer. The time can be extended for an owner to recoup the investment, and the Sign Board of Adjustment can make exceptions and grant variances if warranted. § 51–7.703(c).

## V. LANDMARK DESIGNATION

This court further concludes, as a matter of law, that the landmark designation process does not deny Brewster equal protection or due process.[11]

The Ordinance designates several criteria for landmark designation, including age, visibility, unique physical design characteristics, and the extraordinary significance of the sign to the City. § 51–7.605. Brewster complains that there are no consistent standards to guide the application of the last two criteria. However, specific guidelines are not required when the ordinance provides the decisionmaker with adequate legislative direction. *Mayes v. City of Dallas*, 747 F.2d 323, 325 (5th Cir.1984). The Ordinance provides adequate legislative direction. Unique physical design is determined from such factors as "configuration, color, texture, or other unique characteristics." The evaluation of extraordinary significance turns on the sign's historic significance due to its physical composition or structure, the importance of the sign to an area of the city, and the attitude of the community regarding its historical significance. In making this determination, the historical significance of the company or other entity is not to be considered.

Moreover, Brewster has no valid equal protection claim. Under the minimal scrutiny accorded commercial speech equal protection claims, a classification is valid unless it is "wholly irrelevant" to achieving the City's legitimate interest. *Dunagin*, above, 718 F.2d at 752–53 (citing *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). The interest here is in preserving signs of landmark significance. The criteria used are not wholly irrelevant to making that determination.

## VI. CONCLUSION

The City has borne its burden of showing its entitlement to summary judgment. Brewster has not adduced evidence sufficient to create a fact issue as to each essential element of his claim. At best, his evidence is merely colorable and thus fails the *Anderson* standard. The Ordinance is constitutionally valid.

Consequently, the City's motion for summary judgment is GRANTED. Brewster's claims for relief, injunctive or otherwise, are DENIED.

Within ten days of this date, counsel for the City shall submit a proposed judgment consistent with this memorandum order.

SO ORDERED.

---

10. Brewster also asserts, in a general and conclusory manner, that on-premise signs cannot be depreciated. No evidence could be gleaned from the record to support this claim.

11. The equal protection claim was not raised in the pleadings. While Brewster is thus precluded from raising it, the court also finds it invalid on the merits.